John Foley, Jr., et al., Respondents, *v*. The Mutual Life Insurance Company of New York, Appellant.

Under the Revised Statutes (1 R. S. 719, § 6) a guardian in socage of an infant has no power to surrender a policy of insurance belonging to his ward.

*It seems* that the powers and duties of such a guardian at common law and under the Revised Statutes are limited to the real estate of his ward and the personalty connected therewith, such as animals, implements, etc.; he may not reduce to possession, release, discharge or otherwise dispose of the choses in action of his ward.

Mere acquiescence on the part of a ward in an unlawful disposition by his guardian of a chose in action belonging to him will not estop him from asserting his right, and to estop him by ratification his acts upon which the claim of ratification is based must be very clear and explicit.

The fact that such a guardian, who was the father of his ward, applied a portion of the proceeds received by him for the release or discharge of a chose in action belonging to his ward for the benefit of the latter, does not, in the absence of other evidence, authorize a deduction in favor of the debtor of the amount so expended in an action brought by the ward to set aside the release and to recover on his claim.

Defendant issued to F. an endowment policy of life insurance, which he assigned to his wife and children, who were infants; the wife, who was the owner of certain real estate, died leaving a will by which she gave all her property to her children, and appointed her husband executor and their guardian during minority. F., assuming to act as executor and guardian, in consideration of a sum paid to him, surrendered the policy to defendant, and it was thereupon canceled; at this time the children were all minors. In an action brought by children of F. to set aside the surrender and reinstate the policy, *held*, that the wife had no power to constitute F. testamentary guardian by her will; that he had no power to make the surrender as guardian in socage, and the policy having by its terms matured, that plaintiffs were entitled to a judgment for their proportion of the sum insured, less their proportion of the premiums unpaid.

Reported below, 64 Hun, 63.

(Argued March 23, 1893; decided June 6, 1893.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made April 14, 1892, which affirmed a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

This action was brought to have an alleged surrender of a policy of insurance issued by defendant upon the life of John Foley, adjudged void, and to have the policy declared to be in force in favor of plaintiffs, and to compel a delivery thereof to them upon payment of certain back premiums.

On the 30th day of January, 1876, the defendant issued to John Foley an endowment policy, whereby, in consideration of certain annual payments to be made, it promised to pay him the sum of $10,000 on the 3d day of January, 1891, or if he should die before that time, then to make payment of that sum to his executors, administrators or assigns, within sixty days after notice and proof of his death. On the 25th day of July, 1879, he assigned the policy to his wife and eight children. In November, 1879, his wife died, and afterward one of the children also died. His wife left a will in which she gave all her property, real and personal, to her children, and nominated her husband executor of the will, and appointed him guardian of the children during their minority. On the 16th day of April, 1888, the premiums on the policy having been regularly paid, and the policy then being in force, Foley, assuming to act as executor of his wife's will and guardian of the children, surrendered the policy to the defendant in consideration of the sum of $7,229 paid by it to him, and thereupon it canceled the policy, and that has ever since remained in its possession. At the time of such surrender the seven children interested in the policy were all minors. Thereafter the plaintiff, John Foley, Jr., and Madeleine Foley became of age, and John Foley, Jr., was appointed guardian of his infant brothers and sisters, and in January, 1890, the plaintiffs tendered to the defendant all the premiums on the policy which became due after its surrender and demanded that it should be reinstated. The defendant refused to accept the money so tendered and to reinstate the policy, and then this action was commenced by the plaintiffs, and they prayed judgment that the surrender of the plaintiffs' interest in the policy be set aside and adjudged void, and that the policy be declared to be in full force, and a subsisting policy of insurance in their favor. The defendant

answered the complaint and the action was brought to trial at a Special Term of the Supreme Court, and the court adjudged that the surrender of the policy was illegal and void, and the policy having then by its terms matured, it ordered judgment in favor of the plaintiffs for seven-ninths of the $10,000, less seven-ninths of the premiums remaining unpaid thereon. Further facts are stated in the opinion.

*Edward Lyman Short* for appellant. Upon the death of Mrs. Foley, an estate in lands having become vested in the infant children, the guardianship of these infants, and of their real and personal estate, with the rights, powers and duties of a guardian in socage, belonged to their father, Foley, Sr. (*Torry* v. *Black,* 58 N. Y. 189; *Sylvester* v. *Ralston,* 31 Barb. 286; *Cagger* v. *Lansing,* 64 N. Y. 426; *Lent* v. *Howard,* 89 id. 169; *Emerson* v. *Spicer,* 46 id. 594; 4 R. S. [8th ed.] 2418.) John Foley, Sr., as such statutory guardian of the infant children, had control of their lands and personal estate. He was the so-called statutory guardian in socage. (*Torry* v. *Black,* 58 N. Y. 187; *Carr* v. *Huff,* 57 Hun, 21; *Jackson* v. *Vredenburgh,* 1 Johns. 164; *Byrne* v. *Van Hoesen,* 5 id. 67; *Truss* v. *Old,* 6 Rand. 555; *Emerson* v. *Spicer,* 46 N. Y. 598; *Combs* v. *Jackson,* 2 Wend. 153; *Holmes* v. *Seeley,* 17 id. 78; *Beecher* v. *Crouse,* 19 id. 306; *Whitlock* v. *Whitlock,* 1 Dem. 161.) Upon the death of Elizabeth A. Foley (the wife), in 1879, her interest of one-ninth passed to John Foley, Sr., as her executor; and upon the death of Lizzie Foley (the daughter), in 1885, her interest of one-ninth passed to her personal representatives, her father, John Foley, being her sole next of kin, so that at the time of the surrender in April, 1888, the interests in the policy were as follows: (1) John Foley, Sr., as executor of E. A. Foley, one-ninth, and as next of kin of Lizzie Foley, one-ninth. These interests (two-ninths) the court below rightly found were legally surrendered. (2) John Foley, Sr., as statutory so-called guardian in socage of John, Madeleine, Josephine, Frank, William, Ellen and Alfred, seven-ninths. Each of the children last named were

interested to the extent of one-ninth. (*U. S. T. Co.* v. *M. B. L. Ins. Co.* 115 N. Y. 157; *Whitehead* v. *N. Y. L. Ins. Co.*, 102 id. 151.) John Foley, Sr., having the guardianship and control of the personal estate of the infant plaintiffs, his sur render of the policy was valid. (*Chapman* v. *Tibbits*, 33 N. Y. 289; *Field* v. *Schiffelin*, 7 Johns. Ch. 150.) The plaintiff, John Foley, Jr., is not in any event entitled to any relief, because, first, after attaining his majority, on May 7, 1888, he acquiesced in and adopted the surrender of the pol icy by John Foley, Sr., as executor and guardian to the defendant, with full knowledge thereof; and secondly, by the settlement with his father, John Foley, Sr., after attaining majority, he elected not to pursue his remedy against the com pany, and such settlement in particular constituted a ratifica tion of his father's act in receiving the money, and the court below erred in not so holding. (*S. N. Bank* v. *Burt*, 93 N. Y. 249; *Beardsley* v. *Hotchkiss*, 96 id. 211; Pom. Eq. Juris. § 588; *Fowler* v. *B. S. Bank*, 113 N. Y. 450; *Riley* v. *A. S. Bank*, 36 Hun, 522.) The proceedings in the Surrogate's Court by Foley, Jr., and the communication to the defendant in 1888, were on the basis that the apparent right of Foley, Jr., to act as testamentary guardian was a valid legal right. Foley, Jr., could not thereafter take the antagonistic and incon sistent position which is involved in the maintenance of this action, viz., that his father was not testamentary guardian. (*Terry* v. *Munger*, 49 Hun, 564; *Tinkler* v. *Hilder*, 4 Exch. 187; *Wilcox* v. *Odden*, 15 C. B. [N. S.] 837; *Freeman* v. *Read*, 9 id. 301.) The plaintiff, Madeleine Foley, is not entitled, in any event, to any relief, because, among other reasons, she has elected the settlement with her father, Foley, Sr., in lieu of any remedy, if she ever had any, against the company. (*Treat* v. *Treat*, 35 Conn. 210.) The infants Josephine, Frank, William, Ellen and Alfred, are bound by the election of the plaintiff, Foley, Jr., their present general guardian, to accept the settlement with Foley, Sr., and the former is estopped from claiming as such guardian that the settlement does not affect his wards, since he received and

holds property under the agreement of the settlement, as trustee for them, and there is no offer on their behalf to restore the fruits of the setlement, and Foley, Jr., has put it out of his power to restore. (*Pierson* v. *Hooper*, 3 Johns. 70 ; *Francis* v. *N. Y. & B. E. R. Co.*, 17 Abb. [N. C.] 6 ; *Crummey* v. *Mills*, 40 Hun, 370.) Irrespective of the fact that Foley, Sr., was statutory guardian so-called in socage, of the children, he having acted as a guardian, is to be treated in a court of equity as an ordinary trustee, so far as his liability is concerned, for any personal property of the children dealt with by him, and consequently the court erred in not ordering a reference, where, on the settlement of his accounts, Foley, Sr., would be allowed credit for such sums as he necessarily expended for the support of his children, of which the defendant would have the benefit. (*Mason* v. *Roosevelt*, 5 Johns. Ch. 542 ; *Jacox* v. *Jacox*, 40 Mich. 473 ; *Beardsley* v. *Hotchkiss*, 96 N. Y. 219 ; *Browne* v. *Bedford*, 4 Dem. 304 ; *Potter* v. *Titcomb*, 7 Maine, 302 ; *Turner* v. *Kouwenhoven*, 100 N. Y. 115; *Fenlon* v. *Dempsey*, 22 Abb. [N. C.] 114.) The court having decided that seven interests in the policy had not been canceled, also erred in that it did not order a reference to determine how much of the $7,229 was expended by Foley, Sr., for the benefit of the children, as such amount must be credited to the defendant. (*Wuesthoff* v. *G. L. Ins. Co.*, 107 N. Y. 580; *Clark* v. *Montgomery*, 23 Barb. 472.)

*Herbert Green* for respondents. John Foley, Sr., was neither the general nor the testamentary guardian of plaintiffs, and defendant was bound, at its peril, to ascertain whether he was in fact guardian. (*Beardsley* v. *Hotchkiss*, 96 N. Y. 201; Code Civ. Pro. §§ 2851, 2852.) There was no forfeiture for nonpayment of premiums subsequent to the attempted surrender and cancellation of the policy. (*Carter* v. *B. L. Ins. Co.*, 110 N. Y. 15; *Whitehead* v. *N. Y. L. Ins. Co.*, 102 id. 143.) John Foley had no right to surrender the policy as guardian in socage of the plaintiffs. (Code Civ. Pro. § 2746 ; *S. O. Co.* v. *A. Ins. Co.*, 79 N. Y. 506; *Thomas* v. *Bennett*,

56 Barb. 197; *Emerson* v. *Spicer*, 46 N. Y. 594; *Holmes* v. *Seeley*, 17 Wend. 75; *Whitlock* v. *Whitlock*, 1 Dem. 161.) The proceedings taken by John Foley, Jr., in the Surrogate's Court were in his own behalf only, and constituted no defense, as an election of remedies or otherwise, even as against himself. (*Bosley* v. *N. M. Co.*, 123 N. Y. 558.) The agreement of settlement between John Foley, Sr., and John Foley, Jr., one of the plaintiffs, is not a bar to this action as against any of the plaintiffs. (*Green* v. *Green*, 69 N. Y. 553.) Defendant did not make a proper case for a reference. (*Armstrong* v. *McKelvey*, 104 N. Y. 179; *Rothschild* v. *Mack*, 115 id. 1: *Richards* v. *Tourette*, 119 id. 54.)

EARL, J. Mrs. Foley had no power by her will to constitute her husband guardian of her minor children, and while he assumed to act as such it is now conceded that he was not their testamentary guardian, and that he derived no power under the will of his wife to act as such. But they took under the will of their mother real estate, and hence it is claimed on behalf of the defendant that he became the guardian in socage of his minor children under the provisions of the Revised Statutes where it is provided in section 5 (4 R. S. [8th ed.] 2418), as follows: "Where an estate in lands shall become vested in an infant, the guardianship of such infant, with the rights, powers and duties of a guardian in socage, shall belong (1) To the father of the infant. (2) If there be no father, to the mother. (3) If there be no father or mother, to the nearest and eldest relative of full age, not being under any legal incapacity, and as between relatives of the same degree of consanguinity males shall be preferred." Section six provides that, "To every such guardian, all statutory provisions that are, or shall be in force relative to guardians in socage, shall be deemed to apply." As a guardian constituted by this statute is clothed with the rights, powers and duties of a guardian in socage, it becomes important to know what were the powers, duties and authority of a guardian in socage at common law prior to the Revised Statutes.

Guardianship in socage was an incident of the feudal tenures existing under the English common law of real estate, and existed only where an infant under fourteen years of age was seized of real estate. No person could be a guardian in socage who could inherit from the infant; but the right of guardianship was in such of the infant's next of kin as could not take by inheritance from him the socage estate in respect of which the guardianship arose; and if there was one or more in common degree of relationship, he who first obtained possession of the infant generally had the custody of him. The guardian in socage was recognized as having an estate in the land of his ward, and he could maintain in his own name any appropriate action to recover the rents and profits and to recover damages for trespass or waste upon the land, and to recover possession of the land itself. As the common-law socage tenure was swept away by the Revised Statutes, the statutory guardianship was constituted by those statutes to take the place of the common-law guardianship in socage, and it may for convenience be called by the same name. The guardianship there constituted was like the guardianship in socage at common law, except that it continued until the infant reached the age of twenty-one years, and relatives who could inherit from the infant were not excluded. It is claimed by the plaintiffs that Foley as guardian in socage under these provisions of the Revised Statutes had no power to surrender the insurance policy. The defendant, on the contrary, claims that he did have such power, and the counsel on both sides have, with great diligence and industry, examined and brought to our attention numerous authorities which are claimed to bear upon this controverted question. We have carefully examined them all and are satisfied that as such guardian Foley had no power to surrender the policy.

It is claimed on the part of the plaintiffs that guardians in socage at common law had to do only with the real estate of their wards, and, we think, that is substantially true. Such a guardian could have no being whatever, except when the infant was seized of real estate in socage tenure, and as that was essential

it may be inferred that his powers and duties related to the real estate on account of which his guardianship was consti- tuted. In the early history of the common law there was very little personal property, and the guardianship of the infants and of their real estate was very naturally the main object of the law. It is probable that as the guardian in socage was entitled to the possession of the real estate, he also took possession of the animals, implements and other personal property connected with the real estate, and having possession, he could probably maintain an action for any interference with such personal property without right or authority by a mere stranger, and that he thus had the control of such per- sonal property as well as of all the real estate. Our own researches, aided by the industry of counsel, have not brought to our attention a single case in England or in this country where the question has directly arisen as to the power of a guardian in socage over the personal property of his ward; and it has never been decided or intimated in any judicial opinion that such a guardian could reduce to possession the choses in action of his ward, or release, discharge or dispose of them. In Coke upon Littleton (1 Am. ed., Butler & Har- graves' Notes, 88 B), the learned editors say : " But whether the guardian in socage is entitled to take into his custody the infant's personal estate, we have not yet been able to ascertain by any express authority." But they also say that they are inclined to think that the personalty was under the control of the guardian in socage, except where by the custom of the particular place it happened to be liable to a different custom; and they claim that their views are strongly confirmed by the manner in which the Act 12 Charles II, chap. 24, regulated the powers of a guardian which it enabled the father to appoint. That act authorized the father by will or deed to appoint a guardian for his minor children, and the guardian thus appointed was authorized to take the custody of the infant's personal estate as well as his real estate, tenements and hereditaments, and bring such actions in relation thereto, " as a guardian in common socage might do." And the reasoning of the learned

editors is that these words necessarily import that the personal estate of infants was equally with their real estate subject to the custody and control of the guardian in socage. The provisions of that statute were substantially enacted in this state by chapter 47 of the Laws of 1787, and they have continued ever since and are now found in the Revised Statutes (4 R. S. 2612); and the provision now is in section 3, that the guardian thus appointed by the father shall "take the custody and management of the personal estate of such minor, and the profits of his real estate during the time for which such disposition shall have been made, and may bring such actions in relation thereto as a guardian in socage might by law." We think the inference to be drawn from this statute, that a guardian in socage had the control and possession of all the personal estate of his ward and could bring any action in reference thereto as he could in reference to any of the real estate, is very uncertain and unsatisfactory. As before stated, it is probably true that a guardian in socage, having the possession of the personal property of his ward, used on and connected with his land, could bring actions in reference to the same. But we do not think it is a legitimate inference from these statutes that a guardian in socage had the control at common law of all the personal property of his ward, and that he could use, manage and dispose of it like a general owner possessing the title to the same. There was no reason for giving such a power to the guardian in socage growing out of the feudal tenure or the policy of the common law. An infant even below the age of fourteen possessed of personal property could select his own guardian, and a guardian of such an infant could also be appointed by the ecclesiastical courts and by the chancellor. If the infant possessed *choses in action* which he desired to reduce to possession, he could bring an action in his name and have a guardian *ad litem* appointed for that purpose. There was, therefore, no occasion to vest a guardian in socage, usually a distant relative, with the power and control over the infant's personal estate. Soon after the passage of the statutes of Charles the

Second, Chief Justice VAUGHAN, in *Bedell* v. *Constable* (Vaughan's Reports, 186), said that a guardian in socage did not have the custody of the goods and chattels of the ward. That was merely an expression of opinion of the learned chief justice, as it was not necessary to the decision of the case then under consideration. Our attention is called to text-writers and to the opinions of judges, some of which affirm and some of which deny that guardians in socage had the custody and control of the personal estate of their wards. There is more said upon the subject in *Thomas* v. *Bennett* (56 Barb. 197) than in any other case that has come to our attention. In that case the action was brought by the general guardian in his own name, to recover a debt due to the infant, and the question was whether the action was maintainable, and the learned judge went into a discussion of the power of statutory guardians and guardians in socage. Among other things he said : " The guardian in socage may sue for claims covering the real estate of his ward, but cannot sue to recover his personal property," and " it is true that the guardian in socage can bring no suit except in regard to the real estate, and for the rents and profits of it ; but this is so because he has no control whatever over the other personal estate of his ward, and, therefore, I think, although the language of the section is somewhat loose (§ 3 of the Revised Statutes above cited), the legislature intended to confer the same right upon the general guardian to sue in relation to any of the property under his control that the guardian in socage possessed in reference to the property of which he had charge." When the lawmakers came to deal with the subject of guardians in socage in the Revised Statutes personal estate had come to be a very large share of the property of the country, and if they had intended that the guardian in socage should have control of the personal property of his ward they would have said so in plain and unmistakable terms. If the contention of the defendants is well founded, then the personal estate of an infant, who possesses real estate however small, will be at the absolute disposal of the near relative who

may assume to act as guardian in socage under the statute, without any of the guards, or the security which the law with great care and particularity surrounds the estates of infants, to protect them against the misconduct or maladministration of guardians. Such a guardianship of the infant's personal property is against the entire policy of our laws, and is sanctioned by no precedent and no practice in this state, and is, we believe, against the general understanding of lawyers and judges. Therefore, without a fuller discussion and without a criticism of the authorities to be found in the briefs submitted to us, we have reached the conclusion that Foley had no power or right to surrender the policy to the defendant for cancellation.

' It is, however, claimed by the defendant that the plaintiffs so far acquiesced in and ratified the surrender of the policy that they cannot now repudiate it and reclaim the policy. It was surrendered without their knowledge when they were minors. There is no satisfactory proof that they ever intentionally or consciously acquiesced in the surrender, or ratified it, or that they ever took the fruits of it. They did nothing to mislead or to prejudice the defendant. They have in no way deprived it of its remedy against their father for wrongfully obtaining the money for the policy, and before infants thus situated can be held estopped from enforcing their claim to the policy their acts of ratification and acquiescence should be very clear and explicit. Mere acquiescence alone would not be sufficient to estop them from asserting their rights. We need to add nothing to what has been said in the opinions of the Special and General Terms upon this point.

The defendant alleged in its answer that some of the money received by Foley upon the surrender of the policy was applied to the use and benefit of the plaintiffs; and upon the trial, having Foley under examination as a witness, defendant's counsel, after proving that he received $7,229 from the defendant upon the surrender of the policy, asked him, " Did you apply that money to the benefit of these plaintiffs?" This question was objected to generally by the plaintiffs, and

the court replied : " I will allow him to state that gener-ally, simply for the purpose of a reference if it should be necessary." The witness then answered : " I did." He was asked no further questions and gave no further evidence of the use made by him of the money. It is now claimed by the defendant that the court at Special Term should have ordered a reference to ascertain whether any of the money had been used for the benefit of the plaintiffs in such a way that they could be charged with the same, or that the defendant would be entitled to a credit for the sum that would otherwise be recoverable from it. There was no proof that Foley was not perfectly able to respond to the defendant for the amount of money received by him from it upon the surrender of the policy. He was bound to support his own children out of his own means, and it does not appear that he was not abundantly able to do so, and if he took this money and used it for the support of his children, instead of using his own means for that purpose, the children did not become responsible for the money so used. The defendant was permitted to give all the evidence it offered upon the subject, and upon all the evidence in the case it was impossible for the court to find that the money received by Foley from the defendant was so applied for the benefit or use of the plaintiffs as to make them accountable for it to the defendant. It was bound to make a case showing that there was something to be accounted for to apply upon the demand against it, and then, and not till then, would a reference have been proper to ascertain the amount.

Therefore, after a full consideration of the very able argu-ment submitted to us on behalf of the defendant, we are not convinced thereby, but have reached the conclusion that the judgment should be affirmed, with costs.

All concur, except PECKHAM, J., taking no part.

Judgment affirmed.