motion. Thornall v. Turner, 23 Misc. Rep. 363, 51 N. Y. Supp. 214. The moving affidavit of the defendant contains the only reference to what seems to have been intended as an affidavit of merits, and so far the allegation is: "That, as deponent is advised by his counsel, T. J. Malloy, of the borough of Brooklyn, the said defendant had a good and sufficient defense, upon the merits, to said action for conversion." This is insufficient, because it fails to state, in conformity with the requirements of rule 23 of the general rules of practice, that the defendant "has fully and fairly stated the case to his counsel," and such affidavit is also defective because it omits to allege that the defendant "has a good and substantial defense on the merits in this cause," etc. Bank v. Gill, 23 Hun, 406. See 1 Enc. Forms, pp. 672, 673; 2 Abb. Forms, p. 692. The following averments have been held not to be a compliance with the rule and practice last set forth, viz.: "That the defendant has a good and substantial defense to the bond" (Meech v. Calkins, 4 Hill, 534); "that they have a good and substantial defense upon the merits in the above-entitled cause to the promissory note on which the action is brought," etc. (Durant v. Cook, 1 How. Prac. 45); "that he has a good, valid, and sufficient defense upon the merits in the above-entitled cause to the plaintiff's declaration filed in this suit" (Howe v. Hasbrouck, Id. 68); "that the said defendants have a good and substantial defense upon the merits to the plaintiff's demand on the promissory note, on which this action is brought" (Mason v. Moore, 2 How. Prac. 70); that "each of the defendants had a good and valid defense to the whole of the plaintiff's claim as set forth in said complaint upon the merits thereof," etc.; and that the defendant Mrs. Gill has a "valid defense upon the merits to the whole of plaintiff's claim herein," etc. (Bank v. Gill, supra). Testing the sufficiency of that portion of the affidavit under review in the light of the foregoing rule and adjudications, it must be held that the same is wholly insufficient.

The explanation given by the defendant for his failure to appear upon the return of the summons was, to my mind, satisfactory; and, in view of his poverty, there was no abuse of discretion in opening the default without terms.

It results from the views above expressed that the order must be reversed, with costs, and the proceedings remitted to the court below for further hearing to be brought on upon at least five days' notice, with leave to serve an affidavit of merits. All concur.

---

(25 Misc. Rep. 716.)

### ELDER v. FRANKLIN NAT. BANK OF CITY OF NEW YORK.

(Supreme Court, Appellate Term. January 23, 1899.)

BANKS—CHECKS—ORDER TO STOP PAYMENT.

     A bank, honoring a check through oversight, after it had been ordered by the depositor to stop payment, is liable to him for the amount, though he had agreed that it should not be responsible for a failure to execute such orders, where it had agreed to endeavor to execute them, as its agreement rendered it liable for negligence, notwithstanding his agreement.

Appeal from municipal court, borough of Manhattan, First district.

Action by Francis W. Elder against the Franklin National Bank of the City of New York. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before BEEKMAN, P. J., and GILDERSLEEVE and GIEGERICH, JJ.

Jonathan C. Ross, for appellant.

Nathan Ottinger, for respondent.

BEEKMAN, P. J. The plaintiff had an account with the defendant. On the 3d day of March, 1898, he drew against the account a check, dated March 8, 1898, for the sum of $40, to the order of the Adek Manufacturing Company. On March 5th he sent a notice in writing to the defendant not to pay it. This notice was duly received, and, in accordance therewith and pursuant to the practice of the defendant in such cases, an entry of the receipt of such notice was made by the paying teller of the bank in a book which was kept for the purpose, and a similar entry was also made by the bookkeeper in his ledger against Elder's account. Notwithstanding this, when the check in question came in through the clearing house, it was paid, through an oversight, as the bank officials testify, and this action was brought for the purpose of recovering the amount. The only defense interposed by the defendant bank, which calls for consideration on our part, is that by express agreement with the plaintiff, made before the check in question was drawn, it was exempted from any liability whatsoever in such a case. The agreement thus set forth, with other matters not material to the question here presented, was printed upon the inside of the cover of plaintiff's pass book, and reads as follows:

"It is further agreed that the bank shall not be responsible for the execution of an order to stop payment of a check previously drawn; that the bank will endeavor to execute such orders, but that no liability shall be created by failure so to do; and that no rule, usage, or custom shall be construed to create such liability."

It appears that the pass book in question was substituted for a previous one, which the plaintiff had received when he originally became a depositor in the bank, and which did not contain any such stipulation. The plaintiff testifies that he did not read the alleged agreement, and was not aware of what it contained at the time the check in question was drawn. The counsel for the defendant claims that there is evidence in the case tending to show the contrary, but it is unnecessary for us to pass upon this question, which is one of fact, and which, it must be assumed, the trial justice determined in favor of the plaintiff. But, even assuming that the fact had been otherwise found, we are still of the opinion that, under the circumstances, the defendant was not relieved by the agreement from the consequences of its negligent act. Undoubtedly, in the absence of any agreement, the bank was bound to respect the notice which it had received, and for a failure to observe the directions of its depositor in that regard it would have been

55 N.Y.S.—37

clearly liable. The check was a mere order upon the bank to pay from the depositor's account according to the instructions in that respect contained therein, and was subject to revocation by the drawer at any time before it was paid; and, if the bank should pay after notice of such revocation, it would be held to have paid out its own funds, and could not, therefore, charge its depositor with the amount, but must bear the loss itself. The agreement in question is, therefore, one which is in derogation of the common law in such cases, and, being framed by the defendant itself for its own benefit, must be strictly construed.

It will be observed that such agreement does not declare unconditionally that for the failure to observe a stop order the bank shall not be liable, but it invites the assent of its depositors to the engagement by agreeing that it will endeavor to execute such orders. This is a most important qualification, and was doubtless inserted as an assurance to them that the bank would still exercise some care in the matter. Indeed, it can scarcely be credited that any bank could obtain depositors of any account under an agreement that under no circumstances should it be responsible for a failure to observe their directions with respect to the stoppage of checks. The defendant, it will be observed, did not refuse to receive any such notices. Indeed, the evidence in the case shows that it not only recognized the right of its depositors in that regard, but also provided a method of registering such notices or orders, so as to assure the proper observance of them by its clerks, thus acknowledging the obligation which it had assumed to "endeavor to execute such orders." Upon a proper construction of the language used in the agreement, we are of the opinion that its fair import was that the defendant should not be liable, if in good faith it paid the check that had been stopped, unless it failed properly to fulfill its agreement to endeavor to comply with the depositor's direction. In other words, the promise to make such endeavor necessarily imported the exercise by the bank of at least ordinary care in so doing. Any other construction than this would not only render the engagement meaningless, but also most injuriously misleading to depositors.

The agreement, then, is to be construed as if it read as follows (the words inserted by us being italicized):

"It is further agreed that the bank shall not be responsible for the execution of an order to stop payment of a check previously drawn; that the bank will endeavor to execute such orders, but that no liability shall be created by failure so to do, *where the bank has exercised ordinary care in that regard;* and that no rule, usage, or custom shall be construed to create such liability."

The courts are not prone to construe instruments in such a way as to support a waiver of liability for negligence. Appleby v. Bank, 62 N. Y. 12; Allen v. Bank, 69 N. Y. 314; Mynard v. Railroad Co., 71 N. Y. 180.

The first two cases above cited bear upon the liability of a savings bank for the payment of money to the wrong person. In the first case the by-law of the bank read:

"Although the bank will endeavor to prevent fraud upon its depositors, yet all payments to persons producing the pass books issued by the bank shall be valid payment to discharge the bank."

In commenting upon the rule, Church, C. J., giving the opinion of the court, says (page 17):

"But these rules do not dispense with the exercise of ordinary care on the part of the officers of the bank. If, by a regulation designed to prevent fraud upon depositors, which by the rules the bank promised to 'endeavor' to do, a fact or circumstance is brought to the knowledge of the officers, which is calculated to, and ought to, excite the suspicion and inquiry of an ordinarily careful person, it is clearly the duty of the officers to institute such inquiry, and a failure to do so is negligence, for which the bank would be liable; and such, I understand, is the doctrine of the cases cited by the defendant. The officers of these institutions are held to the exercise of reasonable care and diligence."

The second case above cited is substantially to the same effect.

The third case is one against a common carrier, where the latter claimed exemption from liability for its negligence under an agreement, contained in the contract of shipment, to "release and discharge the said company from all claims, demands, and liabilities, of every kind and character whatsoever, for or on account of, or connected with, any damage or injury to, or the loss of, said stock, or any portion thereof, from whatsoever cause arising." It was there held that while, taken literally, the language would include a loss from negligence, it would not be so construed; the court saying (page 183):

"Every presumption is against an intention to contract for immunity for not exercising ordinary diligence in the transaction of any business, and hence the general rule is that contracts will not be so construed, unless expressed in unequivocal terms."

It will be noticed that the court rests the principle of its decision, not upon law which is peculiar to common carriers, but upon a rule applicable to all contracts.

We are clearly of the opinion that the construction which we have given to the agreement in question is sustained by both reason and authority, and, as the record discloses evidence enough to support the finding of the trial justice that the defendant had been negligent, it follows that the judgment must be affirmed.

Judgment affirmed, with costs. All concur.