of the concern.   Upon the termination of the partnership in a manner provided in the agreement, what the plaintiff was to receive, and all that he was to receive, by the terms of such agreement, was the sum of $250, and his unpaid half of the net profits.   If the plaintiff were suing here to recover a half of the net profits, as actually earned, it is conceded that an accounting would be necessary, and that his action should then have been brought in a court of equity. But such is not the case.   He is suing, so far as profits are concerned, only for the minimum guarantied sum of $20 a week,—the amount which the defendant bound himself to pay in any event, whether profits were actually earned or not.   We have here, then, an agreement which settles the exact minimum sum which the plaintiff was to receive upon the expiration of the co-partnership, which was to be subject to no diminution; and the case, therefore, is one which comes within the class of cases above mentioned, where an action at law may be brought by one partner against the other.   I am of opinion, therefore, that the court erred in dismissing the complaint on the ground on which such dismissal was placed, and that a new trial must be had.

Judgment reversed, and a new trial ordered, with costs to the appellant to abide the event.   All concur.

---

(33 Misc. Rep. 92.)

### FICKEN v. EMIGRANTS' INDUSTRIAL SAV. BANK.

(Supreme Court, Appellate Term.   November 27, 1900.)

1. BANKS—SAVINGS PASS BOOK—PAYMENT TO BEARER.
   Where one deposited money in a savings bank for an infant, and the deposit was paid to the child's father on presentation of the pass book by him. a by-law of the bank, printed in the pass book, to the effect that, while the bank would endeavor to protect depositors, all payments to persons producing pass books should discharge the bank, did not relieve the bank of liability to the beneficiary, since, knowing the one presenting the book to be her father, it did not use ordinary care.

2. SAME—PARENT—PERSONAL PROPERTY OF INFANT.
   The father of a child, not being either her general or testamentary guardian, was not entitled to moneys deposited for her benefit in a savings bank.

3. SAME.
   Where money was deposited in a savings bank for an infant, and the bank negligently paid the same to the child's father, in a suit by the beneficiary to recover of the bank testimony of the father that the money was expended in carrying a question pending between members of his family to such a head as resulted in the child's remaining at a certain college a year longer than she otherwise would have done did not justify a conclusion that she received the benefit of the money in such sense as to defeat her recovery.

Appeal from municipal court, borough of Manhattan, Second district.

Action by Clara M. Ficken against the Emigrants' Industrial Savings Bank.   From a judgment in favor of defendant, plaintiff appeals.   Reversed.

Argued before BEEKMAN, P. J., and GIEGERICH and O'GOR-MAN, JJ.

Albert Day, for appellant.
Richard O'Gorman, for respondent.

BEEKMAN, P. J.   On the 10th day of October, 1889, one James Reid made a deposit with the Emigrants' Industrial Savings Bank of $56.40, under the following title: "James Reid, for Clara M. Reid." Clara M. Reid was the granddaughter of the depositor, and at that time was some 6 or 7 years of age.   On August 10, 1894, one Charles Reid, the father of Clara M. Reid, presented the bank book to the bank, and demanded payment of the amount then due upon said account.   He was duly identified, and the bank paid to him the amount due, namely, $79.08, and the account was closed.   Subsequently, and upon the discovery by Clara M. Reid of what had been done, this action was brought against the bank by her through her husband, William Ficken, as her guardian ad litem.

Upon the trial, and at the close of the entire case, the defendant's counsel made the following motion: "I move to dismiss the complaint on the ground that payment, under the by-laws of the bank, has been proven."   The trial justice having awarded judgment in favor of the defendant dismissing the complaint with costs, the matter is now before us upon an appeal therefrom.   The question, then, which is presented for our decision, is whether, under the by-laws of the bank, payment to the father of the plaintiff of the amount in suit discharged it from any further liability to the plaintiff.

The by-law relied upon was printed in the pass book, and formed part of the contract between the depositor and the bank.   It reads as follows:

"All deposits and all payments shall be entered at the time they are made in the books of the bank, and also in the pass book of the depositor, who shall then examine the same.   The pass book shall be the voucher of the depositor, and the possession of the pass book shall be sufficient authority for the bank to warrant any payment made and entered in it.   The bank shall not be liable or called on to make any payment without the presenting of the pass book at its counter, that the proper entry may be made in it.   Although the bank will endeavor to prevent fraud on its depositors, yet all payments to persons producing the pass book issued by the bank shall be valid payments to discharge the bank.   In the case of lost books, the bank will decide as to the person to whom payment shall be made, and without the right of the depositor in such lost books to question the correctness of the payment."

It is well settled that, notwithstanding stipulations of this character, the bank still owes a duty to its depositor to exercise ordinary care in making payments, and that, in the absence of such, it still continues liable to the depositor, where it has made payment to the wrong person, notwithstanding that such person presented the pass book to the bank at the time such payment was made.   Appleby v. Bank, 62 N. Y. 12.   In that case the by-law of the bank read:

"Although the bank will endeavor to prevent fraud upon its depositors, yet all payments to persons producing the pass books issued by the bank shall be valid payments to discharge the bank."

It will be observed that the by-law in this case is in precisely the same words. In commenting upon the rule, Church, C. J., giving the opinion of the court, says (page 17):

"But these rules do not dispense with the exercise of ordinary care on the part of the officers of the bank. If, by a regulation designed to prevent fraud upon depositors, which by the rules the bank promised to 'endeavor' to do, a fact or circumstance is brought to the knowledge of the officer, which is calculated to and ought to excite the suspicion and inquiry of an ordinarily careful person, it is clearly the duty of the officers to institute inquiry, and a failure to do so is negligence for which the bank would be liable, and such, I understand, is the doctrine of the cases cited by the defendant. The officers of these institutions are held to the exercise of reasonable care and diligence."

The present case is much stronger for the plaintiff than the one above cited. Here the bank was fully advised of all of the facts. It was apparent, of course, that the plaintiff's father was not the depositor nor the beneficiary of the deposit. When he presented the pass book to the bank, the latter knew that he was the plaintiff's father, and that he was not entitled to receive the money, unless it appeared that he was the guardian of the plaintiff, and as such authorized to collect and receive her personal property. It is manifest, therefore, that, in so far as the defendant seeks to escape liability by reason of the by-law above mentioned, its position is utterly untenable. Elder v. Bank, 25 Misc. Rep. 716, 55 N. Y. Supp. 576.

It is further claimed by the defendant that the father was, as a matter of law, entitled to receive the money in question, although he was neither the general nor testamentary guardian of the plaintiff. This question, however, has been decided adversely to this contention in the case of Foley v. Insurance Co., 138 N. Y. 333, 34 N. E. 211, 20 L. R. A. 620, where the matter underwent a somewhat elaborate discussion.

It is also contended that the proof shows that the money received by the father was expended for the benefit of the plaintiff, and that she cannot, therefore, succeed in this action, because she has really had the benefit of the money in question. Upon this point the father testified as follows:

"Q. Tell what you did with the money. A. That money was expended in personal expenses, daily personal expenses, for the purpose of carrying a question which was pending at the time between parties in our family to such a head as would permit this girl to remain at a college where she was for another year. Q. What college was that? A. Providence, Rhode Island. The result of that was that that girl did remain for another year, and in default of this she would not have remained for another year. I am free to say any gentleman, under all the circumstances, would have done the same as I did."

This falls far short of proof which would justify a judicial conclusion that the plaintiff received the benefit of the money in question in any such sense as would make her accountable therefor. It is quite clear that the plaintiff was entitled to judgment, and that the dismissal of her complaint was error calling for a reversal.

Judgment reversed, and a new trial ordered, with costs to the appellant to abide the event.