113        89
a212s  134

## Mutual Life Insurance Company, et al., v. Kate M. Allen, for use, etc.

### Gen. No. 4,247.

1. VERDICT—*when, will not be disturbed.*   A verdict will not be disturbed when no errors of law appear, unless against the clear preponderance of the evidence.

2. APPLICATION FOR INSURANCE—*when false statements in, will not defeat recovery upon policy.*   False statements contained in an application for insurance will not defeat a recovery upon the policy issued pursuant thereto where the facts claimed to have been suppressed were known to the agent who solicited the insurance; and notice to such agent is notice to the company.

3. PREMIUM—*when, deemed paid.*   The acceptance by the agent of an insurance company of notes for the premium and the delivery of the policy completes the contract and puts the policy in full force precisely as though the premium had been paid in cash; and this notwithstanding the policy may have specifically provided that the same should not be in force until the premium has been paid.

4. INSURANCE POLICY—*when right to cancel, does not exist.*   When no right of cancellation is reserved in a policy of insurance, neither party has the right to withdraw himself from the obligations imposed thereby without the consent of the other, and where such a policy is made for the benefit of another, the consent of such beneficiary must also be obtained.

5. INSURANCE POLICY—*when insured may not surrender.*   Where a husband obtains a policy on his life for the benefit of his wife and children, he cannot surrender the same without the consent of his beneficiary.

6. INSURANCE POLICY—*right to assign.*   An insurance policy is not negotiable in this state either by virtue of the common law or by statute, and the same cannot be assigned so as to vest the legal title in the assignee.

7. INSURANCE POLICY—*how, sued upon, where assigned.*   Where an insurance policy has been assigned, the suit must be brought in the name of the assignor for the use of the assignee.

8. USEE—*effect of suing for benefit of.*   The use in the declaration of the words "for the use," etc., are mere surplusage and are only inserted

to protect the assignee from the claims of the plaintiff and serve to give notice to the defendants of whatever interest the usee may have; all defenses can be interposed to the action in this form of pleading that could have been interposed had the usee's name been eliminated.

9.   TROVER—*who may maintain, for conversion of insurance policy.* The beneficiary of an insurance policy which during the life of the insured has been wrongfully converted by the agent of the company, may, after the death of such insured, maintain trover on account thereof and recover from the company the amount due thereunder, notwithstanding such policy may have contained a provision reserving to the insured the right at will to change the beneficiary named in the policy.

10.   TROVER—*joinder of counts in.* Counts in case and counts in trover may be joined in the same declaration.

11.   JOINDER OF COUNTS—*test of determining propriety of.* The test as to whether different causes of action can be properly joined, depends upon whether the same judgment can be rendered on both.

12.   JUROR—*when, not disqualified to serve.* Where a juror has upon his *voir dire* answered questions truthfully and it does not appear that he was absolutely disqualified to serve in the capacity of juror, a fact subsequently discovered which might have justified a peremptory challenge, will not affect the validity of the verdict in which he participated.

Action of trover.   Appeal from the Circuit Court of Peoria County; the Hon. NICHOLAS E. WORTHINGTON, Judge, presiding.   Heard in this court at the April term, 1903.   Affirmed.   Opinion filed March 14, 1904.

WINSTON, BABCOCK, STRAWN & SHAW, PAGE & WEAD, and EDWARD LYMAN SHORT, for appellants.

ARTHUR KEITHLEY, for appellee.

MR. JUSTICE VICKERS delivered the opinion of the court.

This is an action of trover with a count in case, brought by Kate M. Allen, widow of J. H. Allen, deceased, for the use of Arthur Keithley, against the Mutual Life Insurance Company of New York and Joseph Clarke.

The facts out of which this action arose are, that on September 30, 1901, J. H. Allen made an application, through appellant Clarke, the agent, to the Mutual Life Insurance Company for a policy on his life in the sum of $20,000. The applicant was examined by Dr. S. O. Loughbridge, the regular medical examiner for the company at Peoria. The application was duly approved and about October 17 fol-

lowing, a policy was delivered to Allen. At the time the application was taken, Mr. Allen, the assured, executed four promissory notes, payable to the order of Mr. Clarke, two being for the sum of $361.15 each and due two and four months, respectively, and two other notes for $441.25 each, due six and ten months from date, respectively. These four notes covered the entire premium for the first year. The policy was made payable to Kate M. Allen in case of death. The notes given to Clarke for the premium were indorsed by him and discounted to banks. Allen did not pay any of the notes, but allowed them to go to protest and Clarke was compelled to take them up.

When Allen failed to pay the first note Mr. Clarke sought to get the policy into his possession for cancellation, and Mr. Clarke testifies that Allen had promised him to turn the policy over to him, but did not do so. On December 18, 1901, Allen was taken sick and continued ill until the 27th day of May, 1902, when he died of malarial fever. On February 1, 1902, Mrs. Allen wrote to Mr. Clarke, asking for a loan of $10. To this letter, Mr. Clarke replied on February 7th, and addressed his reply to J. H. Allen, saying: "If you will send me back my policy and have Mr. Gunn meet me in Peoria on Sunday morning, I will give him the $10 to give to you, and I will help you afterwards, besides, to organize that company and get on your feet again. Do this and I will pay his expenses for coming to Peoria." To this letter, Mrs. Allen replied as follows: "My dear Mr. Clarke: In consideration of the contents of your letter written in St. Louis and received by us to-day, I herewith send you policy as requested. We are willing to do anything that will benefit our condition at once. I will be glad to have the money and will return it as soon as possible." This letter was delivered to Mr. Clarke by Mr. Gunn, together with the policy, and he received the $10. The policy was forwarded by Mr. Clarke to the home office in New York and destroyed by the company.

After the death of the husband, Mrs. Allen demanded

the policy of Mr. Clarke and also called for blank proofs of death, which were refused her. Subsequently Mrs. Allen assigned the policy to Joseph Keithley in consideration of $100 and his services as her attorney in collecting the same. A demand was again made on the company and Mr. Clarke for the policy, which was refused, and this suit was begun. A trial in the Circuit Court resulted in a verdict in favor of appellee for $20,658.01, and the appellants bring the case up on appeal.

The appellants urge the following reasons for a reversal of the judgment: (1) the policy was never in force; (2) the policy was voluntarily surrendered; (3) that under the pleadings, appellee cannot maintain this suit; (4) irregularity in the jury; (5) error of the court in its rulings on evidence and in regard to giving and refusing instructions.

The first question presented is, was the policy ever in force? The determination of this point involves the question whether the statements in the application were mere representations or warranties, and whether they were, in fact, false. The court below treated the statements as warranties by giving instructions for appellant based upon that construction of the application, and since this view is most favorable to appellants, it is not necessary that we should decide whether the court below properly construed the application. The other branch of this first question is one of fact; were the alleged warranties of the applicant in fact false? The reasons upon which appellants base their first contention is, that in his application for the policy, Allen made warranties as to his health and habits which have been shown to be false, and that the alleged fraud in this regard vitiates the contract, and that therefore the policy never was in force. These warranties relate to two separate subjects: (1) as to the state of the applicant's health on the date he made his application and prior thereto; and (2) to his habits in the use of intoxicating liquors. Appellants contend that the warranties in regard to both these questions were false. The specific contention of appellants is that the assured, Allen, had diabetes at the time he made

his application and had been so afflicted for some years before; and that he habitually used intoxicating liquors to excess. The question of fact raised by the contention of the appellants, we might reasonably dispose of by saying that the finding of the jury is not against such a clear preponderance of the evidence as to require a reversal on that account, but in view of the importance of this cause, we will proceed to an examination of the evidence bearing upon the question.

Dr. S. O. Loughbridge, who was an experienced physician and had been the medical examiner for the defendant company for fifteen years in Peoria, certified in his official report to the company that he found no indication of diabetes after resorting to the usual and ordinary tests employed to detect its existence. This examination was made in good faith and by a competent and experienced physician and the only way to harmonize his examination with the theory of appellants, is to suppose that there was a conspiracy between Clarke and Allen to impose on Dr. Loughbridge, or between all three of them to defraud the insurance company by imposing a risk on it that they knew was suffering from an incurable disease. There is no pretense that any such fraudulent combination existed; how then can Dr. Loughbridge's report on Allen be true and yet Allen be suffering from diabetes?

Drs. Cooper and Hawks testify to having made the usual medical tests to determine whether Allen had diabetes, on or about November 24, 1901, and they reached the conclusion that he did have the disease at that time. Dr. H. J. Churchill testified that he was called to treat Allen in Elmwood on December 18, 1901. This was only twenty-four days after Drs. Cooper and Hawks made their examinations. December 18, Allen was sick; he had passed through two chills and had a high fever, and Dr. Churchill pronounced it a case of la grippe. On December 20, Dr. Churchill made an examination for diabetes, using the Haines test. He found sugar but did not test for the kind of sugar. This was the symptom which indicated diabetes

to Drs. Cooper and Hawks. Four or five days after, he
made a second test and found only a trace of sugar; he con-
tinued to treat Allen for four months, during which time
he made ten other tests and found no sugar whatever. He
testified that, in his opinion, Allen did not have diabetes.
There was an absence in this case of other well known
symptoms of diabetes, such as excessive thirst, dry skin,
and excessive appetite. The appellants read in evidence an
affidavit for a continuance which had been admitted by the
appellee, giving the evidence of Dr. Donaldson of St. Louis,
Missouri, touching the health and habits of Allen in 1899.
This evidence as set forth in the affidavit is out of line with
all the other medical testimony in the case; according to
this witness, Allen had an advanced case of diabetes, heart
disease, bladder trouble, insomnia, and the morphine and
whiskey habits, and that he could not possibly ever regain
his health. We would hardly expect to see a man with all
these diseases regain his health and pass a first class physi-
cal examination for life insurance over two years after-
wards. The fact that it is shown that Allen was an active
business man, looked the picture of health, weighed on the
day he was examined for this insurance, 227 pounds, and
whose weight had diminished only thirteen pounds during
the four summer months preceding, notwithstanding he had
suffered a bilious attack three weeks before, furnishes a
satisfactory reason for believing that the statements of Dr.
Donaldson were unreliable, to say nothing of the other evi-
dence in the record that tends to impeach his statements.
Other testimony was introduced upon both sides, which had
a tendency to support the respective contentions, but no
useful purpose could be served by rehearsing it. Suffice it
to say that in our opinion, the jury found correctly that
the assured did not have diabetes on the date he made his
application for insurance, nor had he before that time been
so afflicted.

Respecting the contention that Allen was addicted to the
excessive use of intoxicating liquors, the evidence is con-
flicting, and upon a careful review of it, we see no cause to

interfere with the finding of the jury. The assured stated in his application that while he had no daily habit in the use of liquors, that he did drink whiskey. Taking all of his statements together upon this point, they show that he represented his habit to be an occasional and moderate drinker of whiskey, and this is substantially what the weight of the evidence shows. Another answer to this contention is found in the fact that Clarke, the agent who took the application, was well acquainted with Allen; he had known him since 1889, and had drank with him, and during the time he was soliciting this insurance, they drank together. Clarke knew what Allen's drink habit was, and his knowledge was notice to the company. Phenix Insurance Company v. Hart, 149 Ill. 513.

It is also contended that the policy was never in force because the premium was not paid during the life and continued good health of the assured. The acceptance of the notes for the premium by the agent and the delivery of the policy completed the contract, and put the policy in full force, the same as though the premium had been paid in cash. The provision that the policy should not be in force until the premium was paid was waived by Clarke by the acceptance of the notes and the delivery of the policy. Hancock Ins. Co. v. Schlink, 175 Ill. 284.

Assuming the policy to have been in force from and after its delivery, it is next urged by appellants that the policy was voluntarily surrendered for cancellation by the assured with Mrs. Allen's consent. It is not pretended that a right to cancel this policy was reserved to the company by virtue of any provision in the policy; where no such right is reserved, neither party has a right to withdraw himself from the obligations imposed by the contract without the consent of the other, and when a life policy is made for the benefit of another, the consent of the beneficiary must also be obtained. May on Ins., sec. 67, 2nd edition, and cases there cited. When a husband obtains a policy on his life for the benefit of his wife, or his children, he cannot surrender the policy without the consent of the beneficiary.

Whitehead v. N. Y. Life Ins. Co., 102 N. Y. 143; Foley v. Mutual Life Ins. Co., 138 N. Y. 333; Glanz v. Gloecker, 104 Ill. 573. Whatever may have been the concealed purpose of Mr. Clarke in his negotiations with Mrs. Allen, which resulted in her delivering the possession of the policy to him, manifestly the evidence wholly fails to show that Mrs. Allen surrendered the policy for the purpose of cancellation.

It is suggested that since the assured reserved the right to change the beneficiary in his application, that therefore he could surrender the policy without regard to the consent of Mrs. Allen. This was a mere privilege reserved to the assured which might or might not be exercised. Having named his wife in the policy as the person to whom payment should be made in case of death, the duty of the company to pay her and her right to receive the same are not affected by a reservation of the right to change the beneficiary which never had been exercised.

It is next objected that the appellee cannot maintain this suit under the pleadings. This contention is based upon the assumption that appellee had no such title or interest in the policy as will support an action of trover, for the reason that since the assured reserved the right to change the beneficiary, the appellee had no vested interest, but had a mere contingent expectancy. This view is already discussed by us under the second point of appellants' contention, and need not be repeated. We hold that appellee's interest in this policy at the time it was converted, was precisely the same as though no such right had been reserved.

It is said that the assignment to Keithley divested appellee's interest, so that even conceding she had such interest as would support this action the assignment defeats such interests, and she cannot maintain the suit. This results from a misapprehension of the effect of the assignment. An insurance policy is not negotiable either by the common law or by statute, so as to vest the legal title in the assignee. The suit must be brought in the name of the party having the legal title to the policy. The use of the words in the

declaration, "for the use of Arthur Keithley," etc., are mere surplusage and are only inserted to protect the usee from the claims of the plaintiff, and serve to give notice to the defendants of whatever interest the usee may have. All defenses can be interposed to the action in this form of pleading that could be if Keithley's name was eliminated. Union National Bank v. Post, use, etc., 64 App. 404; Scott v. Younge, use, etc., 142 Ill. 233; Brownell Co. v. Critchfield, use, etc., 179 Ill. 61. It in no way concerns appellants that the suit is brought in the name of the plaintiff for the use of another. Boone v. Stone, 3 Gilm. 537; Zimmerman v. Wead, 18 Ill. 304; Atkins v. Moore, 82 Ill. 240; Tedrick v. Wells, 152 Ill. 214; Firemen's Ins. Co. v. Barusch, 161 Ill. 629. There is no objection to the joinder of counts in case and trover in the same declaration. Hayes v. Moss Mutual Life Ins. Co., 125 Ill. 626; 1 Chitty's Pleadings, 200. The test as to whether different causes of action can be properly joined is, whether the same judgment may be rendered on both. Dalson v. Bradberry, 50 Ill. 82.

After the jury had been selected and the trial had been in progress three days one of the jurors complained to the court that he was sick and unable to go on with the trial at that time. This occurred on January 22, which was the fourth day of the trial. The court made inquiry of the juror and from his answers the court ordered an adjournment until two o'clock; at the meeting of the court at two o'clock appellants made a motion to discharge the jury, and to continue the cause on account of the illness of the juror. The court did not pass on the motion, but again adjourned the trial until the following morning, January 23, when the sick juror was again interrogated in open court respecting his ability to go on with the trial, and he informed the court that he was feeling better and that his mind was all right and that he was able to proceed with the hearing of the case, and thereupon the court ordered the trial to proceed and the appellants excepted. There is no error in this ruling. It appears that the appellants had

the benefit of the deliberations and judgment of this juror upon the issues submitted and this was all they were entitled to. The sudden sickness of a juror after he is impaneled is not a ground for a new trial, even in a capital case, where it appears there was a suspension of the deliberations until the juror recovered sufficiently to proceed with the case. Hughes v. People, 116 Ill. 330.

It is contended that the court erred in refusing to discharge the juror Joseph from the panel, on the motion of appellants made on the third day of the trial, because of supposed improper relations existing between the juror and Keithley, usee and attorney for the plaintiff. This contention is based on the fact that the minor daughter of Keithley, while driving on the streets of Peoria on the 28th day of November, 1902, ran into and seriously injured Thomas H. Tamplin, the father-in-law of the juror Joseph, who resided in the family of said juror; that Keithley had donated $75 to employ nurses and pay expenses for the injured man. It is not pretended that this juror made any misleading statements on his *voir dire*. He answered all questions put to him by counsel fully and unreservedly. There was no unsettled business between this juror and the attorney. Keithley was not legally responsible for the negligence of his minor daughter; the legal liability would exist against the daughter and in favor of Tamplin, so in any event the juror was competent, and the most that can be said for appellant's position is that after the juror had been sworn, they discovered a fact which, had it been known before he was accepted, would have caused the challenge of the juror peremptorily. We cannot give our approval to a practice that would allow a party after a juror is accepted and sworn, afterwards to have him discharged, upon the discovery of some fact which might have a tendency to cause such juror to be more favorably inclined to one party than the other. In the absence of any false or deceitful answers by the juror when examined on his *voir dire*, we fail to see how appellants can now complain of the favor or partiality of this juror when for aught that appears, a close

and careful inquiry on appellants' part would have disclosed such bias and have enabled appellants to have challenged him peremptorily. Having failed to discover such fact, all cause to complain for this reason is waived. West Side Chicago St. R. R. Co. v. Huhnke, 82 App. 404.

Appellants insist that the trial court erred in the rulings upon the evidence and our attention is called to quite a number of these rulings in appellants' brief. After examining these several exceptions we fail to find any error therein; to discuss these several exceptions in detail would serve no good purpose and would unnecessarily lengthen this opinion.

Numerous criticisms are made on the rulings of the court in giving instructions for appellee and in refusing instructions for the appellants, but the rulings of the trial court in giving and refusing instructions were in accord with the views expressed in this opinion upon the frictional points in the case, and it is wholly unnecessary to rehearse these points as the same are presented by the instructions.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*