[No. 21311.   Department Two.   February 7, 1929.]

KING COUNTY, *Respondent*, v. UNITED STATES MERCHANTS & SHIPPERS INSURANCE COMPANY *et al., Appellants.*[1]

*Karr & Gregory* and *Charles L. Harris*, for appellants.

*Shorett, McLaren & Shorett* and *Edward R. Taylor*, for respondent.

[1]Reported in 274 Pac. 704.

MAIN, J.—King county brought this action for the recovery of insurance premiums paid by it upon policies which it claimed to have cancelled. The defendant United States Merchants & Shippers Insurance Company answered, denying the right of the county to recover, and by cross-complaint sought judgment against the county for what it claimed was unpaid premiums. The defendant Seeley & Company also denied the right of the county to recover, and by cross-complaint sought a judgment for the amount of commission to which it claimed to be entitled.

The cause was tried to the court, without a jury, and resulted in findings of fact from which it was concluded that the county had a right to recover, and recovery was denied upon both of the cross-complaints. Judgment was entered in favor of the county against the insurance company for the sum of $3,426.99, together with interest, and against Seeley & Company for the sum of $604.82 and interest. From this judgment the insurance company and Seeley & Company have appealed.

The material facts are not in serious dispute, and may be summarized as follows: King county is the owner of a number of vessels, or ferries, which are not ocean-going, but operate upon inland waters. The United States Merchants & Shippers Insurance Company is a corporation engaged in the business of issuing fire and marine insurance policies. Seeley & Company is a corporation which is an insurance agent, and in the transaction out of which this litigation arose acted as a broker for the county.

December 13, 1926, the majority of the board of county commissioners for King county passed a resolution by which Seeley & Company was appointed the agent of the county for the purpose of procuring and placing marine insurance, including fire and collision,

for the year 1927 upon all the vessels owned by the county. January 4, 1927, the majority of the board of county commissioners passed a resolution providing that a contract be entered into with Seeley & Company, constituting it a broker for the county for the purpose of securing insurance upon the vessels for the year 1927.

On the same day, a written contract was entered into by which Seeley & Company was employed as a marine insurance broker for the year 1927 for the purpose of placing all forms of insurance, marine and fire, upon the vessels owned by the county. Under this contract Seeley & Company was to act in all matters affecting the adjustment of losses under the policies, and was to make all necessary surveys during the term of the agreement. The compensation of Seeley & Company was limited exclusively to the share or portion of the annual premium which it would be entitled to receive from the several insurance companies.

January 4 or 5, 1927, Seeley & Company delivered to the board of county commissioners insurance policies covering the vessels which the county owned. The policies were written in the United States Merchants & Shippers Insurance Company, the American Insurance Company and the Globe & Rutgers Fire Insurance Company. These policies were accepted by a majority of the then board of county commissioners. None of the policies, with the exception of those upon the ferry Leschi, were to take effect until subsequent to January 10, 1927. After the policies were delivered, and prior to twelve o'clock noon, January 10, 1927, a warrant was issued as a payment upon the premiums for the policies.

At all times during the transactions above detailed, the board of county commissioners was composed of William C. Gaines, William Brown and Frank H. Paul.

Commissioners Gaines and Brown supported the resolution above mentioned, and authorized the contract with Seeley & Company. At 12 o'clock noon, January 10, 1927, J. W. Sparkman, having been previously elected, succeeded Commissioner Gaines as a member of the board. The board was immediately reorganized, and a resolution was passed, supported by Commissioners Paul and Sparkman, rescinding the resolution authorizing the contract with Seeley & Company, rescinding the contract, and all the policies were returned for cancellation. The insurance companies declined to cancel the policies as requested.

For a number of years prior to the time when the Seeley contract was entered into, it had been the practice of the board of county commissioners to designate a broker to handle all the insurance upon the vessels owned by the county, but at no prior time had a formal contract been entered into. After the policies were cancelled, Commissioners Paul and Sparkman caused other insurance to be written in like amount as those which had been cancelled and at the same cost to the county for premiums. Subsequently the present action was brought, as above stated, by the county, to recover the premiums which it had paid upon the policies which had been written through the agency of Seeley & Company and which the county had cancelled.

The first question is whether the board of county commissioners, after it was reorganized and Commissioner Sparkman became a member thereof, had a right to cancel the contract with Seeley & Company and the insurance policies written under it. The answer to this question depends upon whether the old board, prior to the expiration of the term of one of its members, had a right to enter into a contract for the insurance covering all of the vessels owned by the county, the policies for which would not take effect

until after the expiration of the term of Commissioner Gaines.

Rem. Comp. Stat., § 4056, provides that the board of county commissioners shall have "the care of the county property and the management of the county funds and business" and, in the name of the county, may prosecute and defend all actions for and against the county, and such other powers as are or may be conferred by law. Section 3982 provides that the several counties of this state, among other things, shall have the power

". . . to make such contracts, and to purchase and hold such personal property, as may be necessary to its corporate or administrative powers, and to do all other necessary acts in relation to all the property of the county."

It thus appears that the care of the county property was placed in the board of county commissioners. If the retiring board could make a contract for insurance, the policies of which did not take effect until after the reorganization of the new board, it would be possible for a retiring board, not only to tie the hands of the new board with reference to insurance upon county property, but in many other respects, and effectually hamper the new board in the care and management of property which the statute places in it. In *Board of Commissioners of Coffey County v. Smith*, 50 Kan. 350, 32 Pac. 30, it was held that the board of county commissioners of a county, about to be dissolved under operation of law, has no power to enter into a contract designating the official newspaper of the county and providing for the county printing for another year, so as to tie the hands of the new board, about to meet and organize, and thereby prevent the new board from selecting the official paper and contracting for county printing for the current year after its organization.

In *Board of Commissioners of Jay County v. Taylor,*
123 Ind. 148, 23 N. E. 752, 7 L. R. A. 160, it was held
that a contract by which the board of county commissioners attempted to employ a legal adviser for a
period of three years, to commence three months in
the future and after the time for the election of a person to fill the vacancy caused by the expiration of the
term of office of one member of the board, the term of
employment extending over a period during which
all the members of the board as constituted at the
time of the contract would retire therefrom unless reelected, was against public policy and void. It was
there said:

"It is true that under the contract in question the
beginning of the term for which the appellees were
employed was only postponed three months from the
date of the employment, but in the mean time the term
of office of one member of the Board expired and
that of another began; and if, under such circumstances, attorneys could be employed three months
ahead, why not for one, two or three years in advance?

"But the most obnoxious feature which we find in
the contract is the length of time for which the appellees were employed. We know, as a matter of law,
as we have already said, that the membership of the
Board will be changed as much as three times from
the date of the employment to the expiration of the
time of service, unless some of its members are reelected, and in that case the terms of office will be
different. Unless some of its members are re-elected
there must be an entire change in the membership of
the Board between the date of the employment and the
expiration of the time covered by the contract. This
contract deprives the Board, as reorganized from year
to year, of the right to employ its attorney for the
next following year.

"If such contracts are binding, then no difference
how distasteful an attorney may be to the members
of the Board, or how little confidence they may have

in his ability, legal learning or honesty, so long as he performs the conditions of the contract on his part they are bound to recognize him, accept his services and assume the responsibility.

"And if the contract in question, extending, as it does, over a period of three years, is valid, why may not a like contract covering a period of six, nine or a dozen years be upheld?

"Our conclusion is that the contract is against public policy and void."

In *Millikin v. Edgar County,* 142 Ill. 528, 32 N. E. 493, 18 L. R. A. 447, it was held that a contract for the employment of a keeper of a county poorhouse for three years was not within the power of a board of supervisors, each of whom was elected for one year only, although the statute gives them power to appoint such keeper without any express limitation as to the time. It was there said:

"If the board had the power to enter into a binding contract of this character for three years, no reason is perceived why it might not make a contract for five or even ten years, and, if this could be done, the hands of succeeding boards would be tied,—their powers taken from them."

In 15 C. J. p. 542, it is said:

"Although it has been held in some cases that the contract of a county board may be valid and binding, even though performance of some part may be impossible until after the expiration of the term of the majority of the board as it then existed, yet the general rule is that contracts extending beyond the term of the existing board and the employment of agents or servants of the county for such a period, thus tying the hands of the succeeding board and depriving the latter of their proper powers, are void as contrary to public policy, at least in the absence of a showing of necessity of good faith and public interest."

In support of this doctrine of the text, cases are cited from the courts of last resort of a number of

the states, all of which have been examined. So far as we are informed, no court of last resort has supported a doctrine out of harmony with that stated in this text.

The case of *Webb v. Spokane County,* 9 Wash. 103, 37 Pac. 282, is much relied upon by the insurance company and Seeley & Company, and criticised by the county. In that case it was held that a physician, employed for a term of one year by the county commissioners to attend the poor of the county, and who had accepted the employment and entered upon the discharge of its duties, could not be discharged by the county, even though the employment extended beyond the terms of the commissioners. At the time the opinion in that case was written, the court was composed of five members, two of whom, the writer and one other, signed the opinion. Two members of the court dissented. The fifth member concurred in sustaining the employment of the physician upon a ground other than that stated in the opinion. From this it follows that the opinion in that case, while entitled to due respect and consideration, has not become the law in this state, since it was supported by only two members of the court, which was less than a majority. There is, however, this distinction between that case and the present, with reference to all the policies except those upon the ferry Leschi. There the physician, after the new board was organized, actually entered upon and was permitted for a time to perform the service for which he had been employed.

In the cases of *Taylor v. School District No. 7,* 16 Wash. 365, 47 Pac. 758, and *Splaine v. School District No. 122,* 20 Wash. 74, 54 Pac. 766, it was held that the board of directors of a school district has power to engage a teacher for the ensuing year, notwithstanding the fact that there would be a change in the

membership of the board before the time for the commencement of the term should arrive, but those cases are not controlling upon the present situation. In the employment of a school teacher, there is a necessity for making an employment prior to the time that the term is to begin, which does not exist in the case of insurance matters. Insurance can be bought over the counter any day. School teachers, as is well known, must be employed at a particular season of the year, otherwise the opportunity of getting efficient teachers is greatly diminished. In the employment in those cases, there was a necessity and a public interest. In the present case, for the policies, other than the ones upon the Leschi, there was no necessity, and there was no public interest.

As stated, the new board, without difficulty, placed the insurance at exactly the same rate that it would have cost under the policies caused to be written by the old board. It would not do to hold that, because one of the policies went into effect twenty-four hours before the reorganization of the new board, therefore the old board had the right to tie the hands of the county with reference to all insurance upon its vessels for the succeeding year.

Upon this branch of the case we conclude that the new board of county commissioners was not bound by the contract entered into by the old board with Seeley & Company, and that it had the right to rescind the contract and cancel the policies which had not taken effect prior to the time that the new board was organized.

This included all of the policies except those upon the ferry Leschi, to which attention will now be given. Upon this vessel the United States Merchants & Shippers Insurance Company had two policies, one called the hull policy and the other the

disbursement. In the latter policy there was an express provision authorizing the insured to cancel the same. This right having been exercised, that policy does not need further consideration. In the hull policy there was no provision authorizing the insured to cancel.

Upon this policy the question then arises whether, by reason of the facts or of the law, the county had the right to cancel it. It is said that, since Seeley & Company was the agent for the insurance company and the broker for the county, it thereby represented both parties and for that reason the policy could be cancelled. At the time the policy was accepted and when it went into effect, at twelve o'clock noon, January 9, 1927, which was twenty-four hours before the term of Commissioner Gaines expired, it was well known to the board that Seeley & Company was acting for both parties. The fact that Seeley & Company was acting as agent for the insurance company and as broker for the board, did not give to the new board the right to cancel the policy. *Warren v. Franklin Fire Ins. Co.,* 161 Iowa 440, 143 N. W. 554; *Union Bank of Berry v. National Surety Co. of New York,* 195 Ky. 504, 243 S. W. 13. Even though the contract with Seeley & Company was void on the ground of public policy, the board, as to the insurance upon the Leschi then expiring, had the right to accept the policy and pay the premium thereon.

The hull policy was not subject to be cancelled by reason of any statutory provision. If the insured has the right to withdraw from the contract of insurance, that right must be reserved in the policy or given by statute. 32 C. J. 1256; *Mutual Life Ins. Co. v. Allen,* 113 Ill. App. 89; Cooley on the Law of Insurance, vol. 3, p. 2789. Section 7154 of the code covers the matter of the cancellation of fire insurance policies, but it

has no application to the present situation, since the policy now before us is not a fire policy, but a marine insurance policy. It is argued that the hull policy was a fire insurance policy, but with this contention we cannot agree. It is true that the policy covers perils of the sea, including loss or destruction by fire, but this does not make it, under the authorities, a fire insurance policy and not a marine policy. Cooley on the Law of Insurance, vol. 1, p. 5; *Matheson v. Equitable Marine Ins. Co.,* 118 Mass. 209; Bouvier's Law Dictionary, vol. 3, p. 2968.

As to the hull policy, the board did not have the right of cancellation, and the county therefore does not have the right to recover the premium paid thereon.

The cause will be remanded to the superior court with direction to modify the judgment as herein indicated.

FRENCH and PARKER, JJ., concur.