[No. 29131. Department Two. September 30, 1943.]

THE STATE OF WASHINGTON *on the Relation of John Schlarb et al., Appellants,* v. TOM SMITH *et al., Respondents.*[1]

[1]Reported in 141 P. (2d) 651.

*Thor C. Tollefson, G. E. Peterson, T. L. DeBord (Henderson, Carnahan & Thompson,* of counsel), for appellants.

*Lloyd Shorett* and *Wm. R. Bell,* for respondents.

*Leo Teats* and *Ralph Teats, amici curiae.*

BLAKE, J.—In this action, relators, the county commissioners of Pierce county, applied for a writ of mandate to compel respondents, the county commissioners of King county, to make a tax levy in accordance with the terms of the Laws of 1913, chapter 54, p. 156, § 3 (Rem. Rev. Stat., § 9651 [P. C. § 5948]). From judgment dismissing the action, relators appeal.

The act is entitled:

"AN ACT authorizing counties to contract together for administrative and financial co-operation in the improvement, confinement and protection of rivers and the banks, tributaries and outlets thereof, whose waters flowing into or through such counties work damage by inundation or otherwise, authorizing the levy of taxes and the creation and disbursement of special funds for such purposes, delegating the power of eminent domain in aid of, and providing generally ways and means for the accomplishment of such purposes and the performance of such contracts."

The title is so comprehensive a statement of the purposes of the act and the powers granted to counties as to render a detailed resume of its contents unnecessary. There are certain provisions pertinent to this controversy, however, which should be specifically noticed. By the terms of § 1, subd. (a), "Any such contract" may specify its duration: in perpetuity, for a term of years, "or other measure of time." By the terms of subd. (b), the counties may stipu-

late the amount of money to be expended each year during the life of the contract and the proportion of the financial burden to be borne by each. Subdivision (c) provides:

*"That an annual tax shall be levied, at the same time and in the same manner as other county taxes are levied, each year during the life of the contract, by the county commissioners of each county."* (Italics ours.)

In subd. (d), it is provided that the contract "may be subsequently modified or abrogated by mutual consent . . ." Section 3 provides:

*"When such a contract shall have been entered into it shall be the duty of each of the boards of county commissioners to make for their respective counties, each year, a tax levy at a rate sufficient to meet the requirements of the contract. . . ."* (Italics ours.)

Pursuant to the powers granted by the act, Pierce and King counties entered into a contract designed for the "improvement, confinement and protection of [White river] and the banks, tributaries and outlets thereof." All antecedent conditions prescribed by the act for entering into the contract existed: The White river formed a part of the boundary line between the counties. Its flow had alternated from time to time into the Duwamish and into the Stuck river, which, in turn, empties into the Puyallup, and its flood waters caused damage to both counties. At the time the contract was entered into, there were pending two actions brought by Pierce county for damage caused by the waters of the White river. By the terms of the contract, both actions were dismissed.

The improvement contemplated by the contract provided for the expenditure of one million five hundred thousand dollars for construction, and fifty thousand dollars annually for maintenance for twenty-five years after completion of the construction work. Of these amounts, the contract provided that King county should pay sixty per cent and Pierce county, forty.

August 31, 1921, the contract was modified "by mutual consent" with respect to the amount to be expended for

maintenance for the first five years after completion of the improvement and construction work. It was stipulated in the modification agreement that one hundred and twenty thousand dollars should be provided annually for maintenance "for the period commencing January 1, 1922, and ending December 31, 1926"—the ratio of contribution being the same: King county, sixty per cent, Pierce county, forty. Contributions to the construction and maintenance funds were made in accordance with the terms of the contract as modified until 1942, when King county contributed only twenty-one thousand nine hundred dollars. Without the consent or knowledge of relators, respondents made a tax levy for that year sufficient only to raise that amount for the maintenance fund.

For 1943, without the consent of relators, respondents refused to make any tax levy for maintenance of the project. Relators then brought this action to compel respondents to levy a tax sufficient to raise an additional eight thousand one hundred dollars for 1942, and to levy a tax sufficient to raise thirty thousand dollars for 1943.

Respondents seek to justify their refusal to fulfill King county's obligation under the contract on three grounds: (1) That the contract is against public policy; (2) that construction of Mud Mountain dam, designed to control the flood waters of White river, renders further expenditures for the maintenance of the improvement made pursuant to the contract of January 19, 1914, unnecessary; and (3) that Pierce county has an adequate remedy at law for damages for breach of contract.

*First.* Respondents' contention that the contract is against public policy rests upon the principle that one board of county commissioners cannot enter into contracts binding upon future boards of commissioners. This principle has been applied to contracts made under the general powers granted to county commissioners in the management and control of county affairs. *King County v. United States Merchants & Shippers Ins. Co.,* 150 Wash. 626, 274 Pac. 704. But this principle has no application to a con-

tract entered into under specific statutory authority. Declarations of public policy by statutory enactment are, when within constitutional limitations, conclusive. *State v. Seattle Taxicab & Transfer Co.,* 90 Wash. 416, 156 Pac. 837; *Shorts v. Seattle,* 95 Wash. 531, 164 Pac. 239; *State v. Nelson,* 146 Wash. 17, 261 Pac. 796.

That the act in question is constitutional, there can be no doubt. ". . . legislative authority over counties is unlimited except as that limitation is found in the state constitution." *State ex rel. Board of Commissioners of Pierce County v. Clausen,* 95 Wash. 214, 223, 163 Pac. 744. There is no specific provision of the constitution that would proscribe the Laws of 1913, chapter 54. Since the act itself provides that such a contract may be "in perpetuity, or only for a term of years," the contract is not open to attack on the ground that it is against public policy.

*Second.* The Mud Mountain dam was constructed as a Federal flood control project in the White river. It is designed to hold the flood waters of that river in storage until flood waters have subsided in the streams into which its waters are diverted by the improvement authorized and constructed under the contract between King and Pierce counties of January 19, 1914.

That the dam will alleviate flood conditions in such streams is conceded. But, from the evidence, there is no justification for believing that continued maintenance of the intercounty improvement along such streams has become unnecessary. On the contrary, even respondents' witnesses admit that *some* degree of maintenance is necessary. Colonel Goerz, under whose supervision Mud Mountain dam was constructed, was called as a witness by respondents. When asked if the construction of the dam obviated the necessity of continuing riprapping and bank protection of the White river channel, he answered:

"Well, I would answer that this way: The dam is a part of an over-all project, which includes work to be done in Tacoma, the two ends of the project, in other words, are Tacoma and the dam, between which there was in existence certain channel capacity. The dam was designed

based upon that channel capacity in the White and in the Puyallup. And if through lack of maintenance that capacity should be reduced, which I am not competent to say it would happen, because I don't know the channel condition, but if it should be reduced due to lack of maintenance it would in a measure destroy the value of the project. . . . I would say, as an engineer, that a channel of the nature of the channels as I know them in that vicinity would require maintenance to insure that the capacity was obtained."

Engineers called by relators testified that, notwithstanding the construction of the dam, channels of the streams affected could not be properly guarded against overflow and flooding with an expenditure of less than fifty thousand dollars a year.

Conceding that the contract may be modified or abrogated otherwise than by *mutual consent* of the parties to it (§ 1), the facts in this record fall far short of justifying respondents in ignoring King county's obligations under it.

■ *Third.* The statute (§ 8) sets out in considerable detail the circumstances and conditions under which actions may be maintained for breach of the contract. The section ends, however, with the proviso:

"That either county may have any proper action in the courts to compel the performance of the contract or any duty imposed thereby or by this act."

This record presents a typical case for the issuance of a writ of mandamus. Rem. Rev. Stat., § 1014 [P. C. § 8187], provides that the writ may be issued "to any . . . board or person, to compel the performance of an act which the law especially enjoins as a duty resulting from an office . . ." The laws of 1913, chapter 54, § 3, enjoins respondents, as county commissioners of King, "to make . . . each year, a tax levy at a rate sufficient to meet the requirements of the contract . . ."

The judgment is reversed, and the cause remanded with direction to issue a writ of mandamus, as prayed for by relators, immediately upon the filing of the remittitur with

the clerk of the superior court. The clerk of this court is directed to transmit the remittitur to the clerk of the superior court forthwith.

SIMPSON, C. J., MILLARD, ROBINSON, and MALLERY, JJ., concur.

