DETERMINED IN THE

# SUPREME COURT

OF

# WASHINGTON

[No. 11815.   Department Two.   August 1, 1914.]

THE STATE OF WASHINGTON, *on the Relation of Pacific American Fisheries et al., Plaintiff*, v. LESTER H. DARWIN, *as State Fish Commissioner, Respondent.*[1]

COURTS — JURISDICTION — APPELLATE COURTS — MANDAMUS OR INJUNCTION. Since the power to enjoin the performance of an act by a public officer is an attribute of a court of original jurisdiction and not of an appellate court, an original writ of mandamus will not be issued by the supreme court to define the duties of the fish commissioner in regard to the collection of license fees and dues for the benefit of the fund for the protection of fish, where the applicants for the writ were only indirectly interested in the collection of such fund by reason of their connection with the fish industry, and so far as they were directly interested, the relief sought against the collection of various fees claimed by the commissioner was injunctive rather than mandatory.

MANDAMUS—PARTIES—INTEREST OF RELATOR. Dealers in fish, cannerymen, trap owners, lessees of traps, fishermen and others engaged in the fishing industry have no such specific interest, differing from that of the public at large, in the collection of the license fees and dues to be paid into the state fund for the protection and propagation of fish, as to entitle them to sue out a writ of mandamus compelling the fish commissioner to collect such fees and dues.

MANDAMUS—SUBJECT AND PURPOSES OF RELIEF—GENERAL ENFORCEMENT OF LAWS. Mandamus does not lie at the suit of private parties to enforce generally the laws relating to collection of fees and dues by the fish commissioner or to compel a general and continuing course of conduct, there being no complaint as to any specific act.

[1]Reported in 142 Pac. 441.

MANDAMUS—SUBJECT AND PURPOSES OF RELIEF—DEFINING DUTIES
OF OFFICER. Mandamus against the fish commissioner to define his
duties will not be entertained although he desires the court to take
cognizance of the application, since mandamus does·not lie to define
the duties of an executive officer.

Application filed in the supreme court January 23, 1914,
for a writ of mandamus to compel the performance of duties
by the state fish commissioner. Denied.

*Kerr & McCord*, for petitioners.

*Frank W. Bixby*, for respondent.

FULLERTON, J.—This is an original application for a writ
of mandamus. The affidavit on which the application for the
writ is founded, is as follows:

"E. S. McCord, being first duly sworn, on oath deposes
and says:

"I.   That he is a member of the firm of Kerr & McCord,
attorneys for the petitioners above named; that he makes
this affidavit and application for a writ of mandamus and
prohibition for and on behalf of said petitioners.

"II.   That Lester H. Darwin is now, and at all the times
hereinafter mentioned has been, the duly appointed, qualified
and acting fish commissioner of the state of Washington, and
that said Lester H. Darwin, as such fish commissioner, is an
officer of the state of Washington.

"III.   That the petitioners are engaged in the catching,
canning, salting, smoking, freezing and curing of fish caught
within the waters of the state of Washington. That the Pa-
cific American Fisheries, under the provisions of the laws of
the state of Washington, operates a fish trap for the pur-
pose of catching salmon and other food fishes within the
waters of this state and sells and disposes of the fish so caught
in its trap and fishing appliances to other parties; that it also
operates a fish trap leased to it by the owner and holder of
such fish trap or fishing location, held by such owner under
a license issued to such owner by the fish commissioner of the
state of Washington;·that some of the fish caught at the trap
owned by it and some of the fish caught by it at the trap
which it has so leased it cans, salts, cures, and otherwise pre-
serves; and some of said fish from such trap so operated and

so leased it sells in the form in which they are taken from the trap to third parties.

"That the Pacific American Fisheries also purchases fish from other holders, owners and operators of trap locations and other fishing appliances, and a part of the same it cans and packs in its canneries operated in the state of Washington, and some of the fish so purchased it sells as fresh fish in the form in which they are purchased or caught in its trap or in the trap leased by it.   That it also freezes and sells fish bought, or caught by it in its own trap or in its leased trap. That it also smokes, cures, salts and freezes and sells fish in such preserved form caught by it from its own trap and caught by it from its leased trap, and also sells in such preserved form fish purchased by it from the owners and operators of fish traps, and also sells in such preserved form fish caught by purse seiners and other operators of seines, and sold by such purse seiners and other operators of seines to it. That it also packs and cans in tin cans at its canneries fish bought by it from seiners and bought by it from trap owners and caught by it in its own trap, and caught by it in a trap leased to it, and that it buys fish from trap owners and seiners and sells the same to other cannerymen, who pack such fish so sold in tin cans at the canneries of such purchasers.

"That the Pacific American Fisheries pays the annual license fee for its trap location, and pays the license fee of one dollar per thousand upon all fish caught by it in its trap. That the owners of the fish trap leased also pay the license fee required by law for maintaining their trap, and also pay the license fee of one dollar per thousand upon all fish caught in said trap.

"IV.   That the Swift-Arthur-Crosby Company operates a plant for preserving, freezing and selling fish in the state of Washington, and in addition to purchasing fish caught within the waters of the state of Washington, also purchases fish in the territory of Alaska and in British Columbia, and brings the same into the state of Washington and sells the same in the form in which they are brought in,—that is, in a frozen or iced condition.   That the said Swift-Arthur-Crosby Company also brings in fish partially iced and preserves them in other forms and sells and disposes of the same in the state of Washington.   That some of the fish handled by it are frozen in British Columbia or Alaska, and brought into the state of

Washington under its direction in a frozen form and sold in the same form. That it also acts as the agent of other parties in preserving, selling and disposing of salmon caught beyond the boundaries of the state of Washington and brought within the state of Washington; and acts as the agent of the owners of such salmon but is not otherwise interested in the salmon, except as agent; and that the persons for whom it acts as agent pay the license or tax for catching and preserving said salmon under the laws of Alaska, and also pay all the taxes or license fees of the state of Washington for which they are legally liable. That the petitioner in this paragraph named also buys, preserves and sells salmon and food fishes caught both within the state of Washington and in Alaska and sold by such takers of salmon to a third party and by such third party sold to this petitioner. In other words, this petitioner acts as a successive dealer in such fish after said fish have been once caught, bought by and sold to other parties.

"V. That your petitioners are interested as dealers in fish and as cannerymen, trap owners, lessees of traps, and seiners, and are interested in the conservation, protection and preservation of the fishing industry in the state of Washington. That the petitioner Swift-Arthur-Crosby Company is a citizen, resident and tax payer of the state of Washington, and that the Pacific American Fisheries is a corporation organized under the laws of the State of Maine and authorized to do business under the laws of the state of Washington and is the owner of property and a tax payer in the state of Washington, and is interested in the enforcement of the laws of the state of Washington regulating the fishing industry in all of its branches and is interested in causing to be collected and paid to the fish commissioner and thence covered into the treasury of the state of Washington all sums to which said fish commissioner and the state of Washington are legitimately entitled to receive from all parties engaged in the fishing business in any and all of its branches.

"VI. That the fishing industry of the state of Washington is regulated and controlled by the provisions of the laws of the state of Washington and that such provisions of the laws of the state of Washington provide for the collection of various license fees and charges which are intended by said laws to furnish a fund for the protection, propagation and expan-

sion of the fishing industry and to furnish a revenue for the erection, construction and maintenance of fish hatcheries upon the various rivers of the state of Washington. That, in order that such fishing industry may be properly protected and maintained, it is necessary that all persons, firms and corporations liable for license fees should pay such fees promptly from time to time as they become due to the fish commissioner of the state of Washington. That the legislature of the state of Washington at its biennial sessions appropriates for the protection, regulation and preservation of the fishing industry and for the maintenance of its hatcheries large sums of moneys out of the state treasury, but that such appropriations are measured by the estimated amount of revenue that will be collected during the biennial period by the fish commissioner from the various licensees in the state of Washington who are engaged in the fishing industry.

"VII. That, if for any reason the fish commissioner should fail to collect the amount of the license fees to which he is entitled under the law, and the revenues thus collected by him be thus depreciated and diminished, then the general appropriation made by the legislature will be, according to precedent, reduced by the amount of such diminution or depreciation in the revenues so collected by the fish commissioner. That these petitioners, by reason of their interest as tax payers and by reason of their special interest in the fishing industry, and by reason of their interest in the preservation and protection of the same, and by reason of their interest in the maintenance of hatcheries, are specially interested in having the fish commissioner receive from all persons engaged in the fishing business in any and all of its branches the amount by way of license fees that they legitimately owe to the state of Washington or to said fish commissioner.

"VIII. That in the year 1899 the legislature of the state of Washington passed an act entitled: '*An Act providing for the protection and propagation of the food fishes in the waters of the state of Washington, regulating the catching and sale thereof, establishing licenses, fixing penalties, repealing conflicting laws, and declaring an emergency.*' That section 7 of said act is as follows:

" 'Every person, firm or corporation engaged in the business of buying, selling, packing and preserving or otherwise dealing in salmon, other than canners thereof, shall pay as

a license the sum of thirty cents per ton gross weight or in the round of said fishes bought and sold, packed or preserved, or otherwise dealt in: Provided, No person engaged in the business aforesaid shall pay less than $2.50 per annum. It shall be the duty of each person, firm or corporation affected by the provisions of this section to render to the fish commissioner of the state of Washington, on or before the 10th day of each month, on blanks to be furnished by the said fish commissioner, a detailed statement, showing gross amount of fresh fish in the round bought and sold, packed and preserved, or otherwise dealt in during the preceding month, and each person shall pay to the said commissioner the amount due under the provisions hereof, on or before the 10th of each month, and a failure or neglect to do so shall constitute a misdemeanor, and upon conviction thereof the offender may be punished as hereinafter provided.'

"IX. That the legislature of the state of Washington at its session of 1905, amended said section 7 above set forth and that said section as amended at the legislative session of 1905 reads as follows:

" 'Sec. 3. That section 7 of said act (being section 5270 of Pierce's Washington Code) be amended to read as follows. (Section 7, 5279.) Every person, firm or corporation engaged in the business of buying and selling, packing and preserving, or otherwise dealing in salmon, other than canners thereof, shall pay as a license the sum of ninety cents per ton net weight of said fish bought and sold packed or preserved, or otherwise dealt in: Provided, No person engaged in the business aforesaid shall pay less than $2.50 per annum. It shall be the duty of each person, firm or corporation affected by the provisions of this section to render to the fish commissioner of the state of Washington, on or before the 10th day of each month, on blanks to be furnished by the fish commissioner, a detailed statement, showing net amount of fresh fish bought and sold, packed and preserved, or otherwise dealt in during the preceding month, and each person shall pay to the said commissioner the amount due under the provisions therefor, on or before the 10th of each month, and a failure or neglect to do so shall constitute a misdemeanor, and upon conviction thereof the offender may be punished as hereinafter provided.'

"X.   That the legislature of the state of Washington at its biennial session of 1907, amended said section 3 set forth in the preceding paragraph, so as to read as follows:

" 'Sec. 5.   That section 3 of chapter 170, Session Laws of 1905 be amended to read as follows: Sec. 3.   Every person, firm or corporation, either as principal, agent, or employee, engaged in the business of buying or selling, and preserving or otherwise dealing in salmon, other than canneries thereof, shall pay as a license the sum of ninety cents per ton net weight of said fish bought and sold, preserved or otherwise dealt in.   Provided, No person engaged in the business aforesaid shall pay less than $2.50 per annum.   It shall be the duty of each person, firm or corporation affected by the provisions of this section to render to the fish commissioner of the state of Washington, on or before the tenth day of each month, on blanks to be furnished by the fish commissioner, a detailed statement showing net amount of fresh fish bought and sold, preserved or otherwise dealt in during the preceding month, and each person shall pay to the said commissioner the amount due under the provisions therefor on or before the tenth of each month, and a failure or neglect to do so shall constitute a misdemeanor and upon conviction thereof the offender may be punished as hereinafter provided.'

"That said section as adopted by the legislature of 1907 is also found at section 5213, 2 Rem. & Bal. Code of the state of Washington.

"XI.   That the nature of the fishing business is such that unless the license fees owing to the fish commissioner or to the state  of Washington by the various licensees and the various persons engaged in the fishing business are collected during or immediately subsequent to the expiration of the fishing season during which such license fees and obligations from such persons to the state of Washington mature, it will be impossible for the fish commissioner to collect the entire sum to which the state of Washington or the fish commissioner is entitled.   That a vast number of persons are engaged in the catching, handling, selling and disposing of salmon, and that a considerable number of such persons have no fixed place of abode, and that unless a prompt collection of the amounts due shall be made by the fish commissioner, they will scatter, and it will be physically impossible for the fish commissioner to locate such parties in order to enforce

collection, and that the revenues of the fish commissioner will be very materially reduced and diminished on this account and that the fishing industry itself will be very materially damaged and injured unless the revenues to which the fish commissioner is entitled shall be collected.

"XII.  That a serious doubt has arisen as to the proper interpretation and meaning of said section 5213, 2 Rem. & Bal. Code, and that it is the intention of the fish commissioner to bring against a vast number of people the necessary actions to collect the amount to which he claims to be entitled.  That a vast multiplicity of actions and prosecutions will result if the fish commissioner attempts to maintain separate actions or prosecutions for the enforcement of said section 5213.  That the petitioners in this action are interested specially and in a different way from the general public in having the fish commissioner collect the revenues to which he is entitled under a proper interpretation of said section, and that the fish commissioner is also vitally interested in the performance of his official duties in knowing the amount to which he is entitled under the provisions of the said section, and that both these petitioners and the fish commissioner are desirous of having said section properly interpreted by this court, that the public interests may be subserved, and that the fishing industry may be protected and preserved, and that the fish hatcheries of the state of Washington may be properly maintained, and that the fish commissioner as an official of the state of Washington may be enabled to execute the laws of the state of Washington relative to the fishing industry of which he is commissioner.

"XIII.  That a number of uncertainties and ambiguities have arisen as to the proper interpretation of said section 5213; that in some instances these petitioners have refused to pay the license of ninety cents per ton provided for in said section, for the reason that they do not believe that the fish commissioner is entitled to collect the same; that various parties have refused to pay any portion of the license tax of ninety cents per ton provided for in said act, and that the fish commissioner has threatened to arrest a vast number of persons engaged in the fishing business, including petitioners and has threatened to seize their property under his view of the meaning and interpretation of said act.  That such an attempt on the part of the fish commissioner would result

in a multiplicity of actions and prosecutions, and that irre-
parable damage and injury will result, to the state of Wash-
ington, the petitioners and to the parties engaged in the
fishing business should the fish commissioner carry out his
threat of wholesale arrests, seizures and prosecutions.

"That the contentions of the fish commissioner with regard
to the instances in which he is entitled to the ninety cents per
ton provided for in section 5213 may be enumerated as fol-
lows:   The fish commissioner contends:

"(1)   That a person, whether a seiner or trap operator,
who sells his catch in the same form as when taken from the
water is liable for said tax.

"(2)   That the owner of a cannery who leases a fish trap
or fishing location or seine and catches fish with such appli-
ances or any of them, and thereafter sells the same without
otherwise preserving or dealing in said salmon so caught, is
liable for the tax.

"(3)   That a person who buys salmon caught by another
party and salts, smokes, freezes, or otherwise preserves such
salmon, is liable for the tax.

"(4)   That a person who buys, sells, preserves, or other-
wise deals in salmon within the state of Washington caught
beyond the boundaries of the state of Washington, is liable
for the tax.

"(5)   That an agent who effects a sale of salmon within
the state of Washington for a person, firm, or corporation
catching such salmon, is liable for the tax.

"(6)   That the successive dealers who buy, sell, preserve,
or otherwise deal in said salmon within the state of Wash-
ington, other than canners thereof, are liable for the tax.

"(7)   That persons engaged in the canning business who
buy fresh salmon caught by other parties, irrespective of
where caught, and sell the same within the state of Washing-
ton in the form in which they are caught, are liable for the
tax.

"XIV.   That if the contention of the fish commissioner is
correct, many thousands of dollars of additional revenue will
go into the treasury of the state for the benefit of the fishing
industry.   That if he fails to collect the amount which he
claims, or the amount to which he is entitled, the interests of
the fishing industry will be injured to that extent.   That the
fish commissioner ought to be required to collect all of the

tax provided in said section 5213 to which he is entitled, and that the fish commissioner, the fishing industry of the state of Washington itself, and all tax payers are interested in having the fish commissioner collect all of the revenue to which the state of Washington under said section is entitled.

"XV.   That the fish commissioner, the respondent above named, has decided in his interpretation of said section that the persons engaged in those branches of the fishing industry enumerated in section 5213 are liable in each and every of the instances set forth in the preceding paragraph.   That his interpretation of said act and his determination thereof is a quasi judicial determination, and that there is no appeal from his decision, and that if the said fish commissioner proceeds to enforce his decision by prosecutions, seizures and suits, irreparable injury will result to these petitioners and to all persons engaged in the branches of the fishing industry referred to in said section 5213.

"That the petitioners and such other persons engaged in the fishing business have no right of appeal from the judgment and decision of said fish commissioner, and have no other certain, speedy or adequate remedy at law, unless this court shall issue a writ of mandate compelling the fish commissioner to collect all of the tax to which he is entitled under the provisions of said section 5213, or unless a writ of injunction or prohibition issue restraining him from proceeding to enforce the collection of such taxes, or unless a writ of certiorari be issued, requiring the fish commissioner to make a return to this court showing the acts and things done by him, so that his action may be reviewed by this court.

"Wherefore, your petitioners pray this court that an order be entered requiring the respondent to show cause why he should not proceed to collect the ninety cents per ton tax provided for in section 5213, 2 Remington & Ballinger's Code in those instances specified therein, wherein said respondent claims he is entitled to collect the same, and to show cause why he should not be restrained and prohibited from collecting or attempting to collect and enforce the said tax in the instances specified in the foregoing petition, and that he be required to certify to this court the records and proceedings of his acts, wherein he had determined and decided that he is entitled to collect said tax in all the instances specified in the foregoing petition in which he claims he is

entitled to collect said tax. And further, upon the hearing, that this court order and direct, by writ of mandate or otherwise, the said respondent to enforce the collection of such tax, in the instances specified in section 5213 in which the said fish commissioner is entitled to collect the same, and for such other general relief as your petitioners may be entitled to receive."

Notice of the time when the application would be presented to this court was served upon the fish commissioner, and that officer appeared at the time appointed and filed a general demurrer to the application. The application and the demurrer constitute the pleadings.

In our opinion the application presents no cause cognizable in this court in the first instance. One cannot read the affidavit filed in support of the application without the conviction that the relief sought is injunctive rather than mandatory. In so far as the applicants are directly interested, they seek to restrain the action of the commissioner, not to compel him to perform a specific duty. The power to enjoin the performance of an act by a public officer is an attribute of a court of original jurisdiction, it does not pertain to the duties of a court whose jurisdiction is revisory and appellate.

Again, if we were to concede that mandamus would lie under the circumstances, we think the applicants have shown no such special interest as is necessary to enable them to invoke the writ. Mandamus is a proceeding to compel the performance of an act which the law specially enjoins as a duty from an office, trust, or station, and can be invoked by a private party only where he is peculiarly and specially affected by the nonperformance of the duty. It does not lie at the instance of an individual to enforce the laws generally, or to compel a general course of official conduct. There must be some specific right of the applicant involved differing from that pertaining to the general public. Courts are not created to conduct the municipal affairs of government;

they can act only in specific cases.  This question was before us in the case of *State ex rel. Hawes v. Brewer*, 39 Wash. 65, 80 Pac. 1001, 109 Am. St. 858.  In that case, the relator sought by mandamus to compel the sheriff to enforce the laws relating to the conduct of business on the first day of the week, commonly called Sunday.  It was held that the writ would not lie, the court saying:

"Mandamus will not lie to compel a general course of official conduct, as it is impossible for a court to oversee the performance of such duties.  .  .  .

"The demand is for a continuing course of action.  The writ cannot be any more specific than the petition, and the writ which must necessarily issue under a petition of this kind, and which was peremptorily issued, is no more effective than the statute.  Each equally commands the officer to perform his duty.  One is the announcement of the law by the law making power, the other is the announcement of the law by the court.  The remedy by mandamus contemplates the necessity of indicating the precise thing to be done.  It is not adapted to cases calling for continuous action, varying according to circumstances.  It is the office of mandamus to direct the will, and obedience is to be enforced by process for contempt.  It is therefore necessary to point out the very thing to be done; and a command to act according to circumstances would be futile."

In the case before us, an examination of the affidavit of the relators will show that they do not ask for the performance of any specific act.  The most they ask is that this court define the duties of the fish commissioner and compel him to perform them as thus defined.  But, as we have attempted to show, this is not the province of any court, much less the province of a court of revisory and appellate jurisdiction.

It is said in argument that the fish commissioner himself is uncertain of his duties and desires the court to take cognizance of this application and define such duties.  But such a practice would be contrary to the purposes for which courts are organized.  If this particular officer may require this duty, so may all the other officers of the state, and thus the

entire conduct of the executive department of the government be vested in the courts. The case in hand presents no unusual or extraordinary conditions. Like every other executive officer, the fish commissioner has the duty in the first instance of interpreting the statutes he is called upon to enforce. He must act according to his best lights without concern of those adversely affected by his acts. If he acts erroneously, those affected can be depended upon to find a remedy in the courts according to the usual and ordinary course of procedure.

The application is denied.

CROW, C. J., PARKER, MORRIS, and MOUNT, JJ., concur.