STATE *ex rel.* H. R. KLOSTERMEYER, *et al.*

*v.*

THE CITY OF CHARLESTON, *etc., et al.*

(No. 9978)

Submitted September 4, 1947.   Decided October 7, 1947.

*Rummel, Blagg & Stone,* for relators.

*John J. D. Preston,* for respondents.

*Dewey B. Jones,* for intervening respondents.

KENNA, JUDGE:

This proceeding in mandamus was brought by the State at the relation of H. R. Klostermeyer, Herbert P. Campbell, Virgil W. O'Dell and Charles E. Hodges as residents and taxpayers of the City of Charleston, the last named relator being in addition the owner of a one thousand dollar revenue bond, part of a series aggregating $84,000.00, issued by the City of Charleston as a statutory mortgage lien upon an incinerator plant to be constructed from the proceeds of said bond issue and as a charge against the net earnings of that plant as provided in the resolution adopted the twenty-third day of December, 1935, by the City Council of the City of Charleston under the provisions of Chapter 68 of the Acts of 1935 [W. Va. Code (Michie, 1943) C. 8, Art. 4A]. The named respondents are the City of Charleston, a municipal corporation, R. C. Andrews, Mayor, Roy E. Shamblen, City Collector of said city, and Jesse Asbury and others, naming all of the individual members of the Charleston City Council. The purpose is to require the respondents to perform the alleged contractual obligation undertaken by their predecessors by the issuance of the revenue bond owned by relator, Charles E. Hodges, and other revenue bonds of the same series now outstanding and unpaid; and for the purpose of having held void as a wilful and illegal violation of that obligation a purported ordinance passed by the City Council of the City of Charleston on the twenty-eighth day of April, 1947, repealing Sections 5, 6 and 7 of Chapter 25 of the Code of said city providing for the collection of charges in payment for incinerator services and the setting aside of the earnings so acquired to pay the costs of operating and maintaining the city's incinerator, and to provide for the payment of the interest upon and retirement of the bonds in question.

The petition includes as an exhibit the resolution of the City Council of the City of Charleston authorizing the issuance of the bonds in question and containing an exact copy of the bonds thereby authorized, providing, among other things:

"This bond, and the issue of which it is one, are issued for the purpose of financing the cost of construction of an incinerator plant for the City under and in full compliance with the construction (?) and the statutes of West Virginia, including particularly, Chapter 68 of the Acts of the Legislature of West Virginia, 1935.

"This Bond and the interest thereon are payable only from the revenues of said incinerator plant remaining after the payment only of the reasonable expenses of operation, repair, and maintenance, which revenues have been set aside as a special fund .and pledged for that purpose, and this Bond does not constitute an indebtedness of the City within the meaning of any constitutional provisions or limitations.

"By resolution authorizing the issuance of this Bond and the issue of which it is one, the City has covenanted and agreed to establish and maintain just and equitable rates or charges for the use of and the service rendered by such project, such rates or charges to be sufficient in each year for the payment of the proper and reasonable expense of operation, repair and maintenance of the plant and to provide a sinking fund for the payment of the principal of and interest on this Bond and the issue of which it is one when they shall become due and to provide a margin of safety, which margin, together with any unused surplus of such margin carried forward from the proceeding year, shall equal ten percentum of all other amounts so required to be paid into said sinking fund."

The petition alleges in detail the full compliance with the statutory requirements concerning the issuance of the revenue bonds in question, and their validity is not questioned by the answer of the respondents nor by the petition of the interveners.

The petition alleges that since the adoption of the ordinance of April 28, 1947, no charges have been collected by the City of Charleston for the collection and disposal of garbage and refuse as required by the resolution of its

City Council adopted on December 23, 1935, authorizing the bond issue, and by the provisions of the bonds issued in pursuance thereof. It further alleges that the revenue collected from the charges imposed for that purpose and for the services of its incinerator plant prior to the purported repeal of Sections 5, 6 and 7 of Chapter 25 of the City Code of the City of Charleston was not sufficient to provide for the maintenance of the incinerator and for the retirement and interest charges on the outstanding bonds issued pursuant to the named resolution. The petition therefore prays that the respondents may be required to provide for and to collect sufficient charges for the collection and disposal of garbage or incinerator service to pay the costs of operating and maintaining the incinerator plant and to provide for the interest payment and the retirement of the outstanding incinerator bonds alleged to exceed $50,000.00.

The intervening petition takes the position that because Section 25 of Article 4A of Chapter 8, W. Va. Code (Michie, 1943), expressly provides that the authority given by that act "shall be in addition to and not in derogation of any power existing in any municipality * * *"; that the City of Charleston was at all times free to choose the method used to raise funds to retire the incinerator bonds and to pay the cost of operating and maintaining the incinerator as between charges for incinerator service and general revenue. The intervening petition takes the further position that the repealing ordinance adopted April 28, 1947, was in all respects valid. We believe that the questions raised by the intervening petition can be disposed of together with the questions raised by the answer of the respondents.

The answer of the respondents stresses the fact that at the municipal election held in the City of Charleston on April 21, 1947, there was submitted to a vote the question of either approving or disapproving the ordinance abolishing charges for the collection and disposal of garbage and the use of the incinerator, and that the repealing ordinance of April 28 was adopted by the Council pursuant to an overwhelming majority in favor of paying the

cost of operating the incinerator and the retirement of incinerator bonds from the general revenue of the City of Charleston and abolishing incinerator charges entirely. The answer further takes the position that the relators are not injured until default has occurred in the payment of either the interest or principal of an incinerator bond and, no default having taken place, consequently mandamus is prematurely brought; that petitioners are, in effect, estopped by their long acquiescence in the payment of interest charges and the establishment of a sinking fund for the retirement of incinerator bonds out of the general revenue of the City of Charleston, alleging that the money actually collected for garbage disposal and use of the incinerator has for years been inadequate to provide a net revenue for those purposes, the necessary money having been supplied by the city's general revenue; and that garbage disposal being a constitutional governmental duty of a municipality, its cost is a proper charge against the general revenue of the City of Charleston, like the cost of fire and police protection and of other governmental duties discharged by city governments. The answer takes the further position, as does the intervening petition, that mandamus is not the proper remedy because no relief is required since no duty owing to the relators has been violated.

Dealing first with the question of whether mandamus is a proper remedy, we are at once confronted by the fact that the general authorities dealing with mandamus have little, if any, application because this proceeding, in so far as the bondholder-petitioner is concerned, is brought under the express terms of Code, 8-4A-24, which, in part, reads as follows:

"Any holder of any such bonds, or any of the coupons attached thereto, and the trustee, if any, except to the extent of the rights herein given, may be restricted by said ordinance or resolution authorizing issuance of the bonds, or by the trust indenture, may either at law or in equity, by suit, action, mandamus, or other proper proceeding, protect and enforce any and all rights granted

hereunder or under such ordinance, resolution, or trust indenture, and may enforce and compel performance of all duties required by this article, or by such ordinances, resolution or trust indenture to be performed by the municipality issuing the bond, or by the board or any officer, including the making and collecting of reasonable and sufficient charges and rates for services rendered by the works. * * *"

It is not necessary to discuss at length the powers of the City Council of the City of Charleston nor the difference between its legislative and other functions, other than to say that in this instance we are of the opinion that under the plain terms of Chapter 68, Acts of 1935 [W. Va. Code (Michie, 1943) C. 8, Art. 4A], its duties in discharging the obligations of the city under a revenue bond issue are those of an administrative board, and not those of a legislative body. Here it is acting as an administrative board under an act conferring upon that board a right to issue revenue bonds, not as an indebtedness of the city, but as a charge against the property and earnings of certain specified projects.

The city is not affected by the contract represented by the revenue bonds issued under the act save as expressly provided in the act itself and then only as the "board" set up under the act. The city's fiscal affairs as a governmental unit are separate and distinct. Furthermore, the general authorities are to the effect that where required to enforce performance of a contract in which there is a public interest such as that incurred by the issuance of city bonds, a city council may be subjected to mandamus. *City of Huntington* v. *Huntington Wharf & Storage Co.*, 75 W. Va. 183, 83 S. E. 500, Ann. Cas. 1918A 913. We are of the opinion that mandamus is a proper remedy.

The answer of the respondents emphasizes the fact that in compliance with the provisions of Section 90 of the charter of the City of Charleston the ordinance of April 28, 1947, attempting the repeal of Sections 5, 6 and 7 of Chapter 25 of the City Code providing charges for garbage

disposal, was submitted to a vote of the people of that city on April 21 and was overwhelmingly approved. Under the charter provision relied upon, conceding it to have been ·complied with, which relators deny, we are of the opinion that a referendum cannot affect the validity of an ordinance when questioned for other reasons, as here. That provision is based upon the assumption that ordinances submitted under its terms are valid in all other respects, and controls only the legislative policy of the City Council of the City of Charleston.

As to a default in the payment of interest charges or principal being first required before mandamus lies in this instance, we believe that question invokes the principle that as a rule a petition in mandamus must show the refusal to perform a ministerial duty. Here we are confronted, as stated, with the fact that this is a proceeding under a statute which expressly provides for mandamus to "* * * compel performance of all duties required by this article, or by such ordinances, resolution or trust indenture to be performed by the municipality issuing the bond, * * *." The statute recognizes the fact that the material interest of a bondholder is not confined to the current payment of interest when due, but includes provision for the future payment of principal by the accumulation of a sinking fund which largely affects the market value of his security. We are therefore of the opinion that under the plain terms of the statute authorizing a proceeding in mandamus the allegations of the petition in this matter are sufficient and that mandamus is the proper remedy. Certainly to request the City of Charleston to collect charges for incinerator service in plain violation of the ordinance abolishing them adopted by its City Council on April 28, 1947, would be useless. The cases hold that a plainly futile request need not be alleged. *Fisher* v. *City of Charleston*, 17 W. Va. 595; *Frantz* v. *County Court of Wyoming County*, 69 W. Va. 734, 73 S. E. 328.

As to the question of garbage disposal being a governmental function and therefore properly chargeable to the

general revenue of a municipal corporation, we believe there is no doubt but that principle is sound. *Hayes* v. *The Town of Cedar Grove*, 126 W. Va. 828, 30 S. E. 2d 726. However, the soundness of that principle does not render unconstitutional the provisions of the act in question conferring upon municipal corporations the right and power to perform that duty by the issuance of revenue bonds directly chargeable upon the capital investment and earnings of an incinerator plant constructed in fulfillment of that duty. Apparently it was a part of the legislative purpose to devise a means by which the cost of constructing and operating the named projects could be raised without increasing the general levies of municipalities, in 1935 strained to the breaking point by the tax limitation amendment. We are of the opinion that the act in question grants municipalities the right to elect the manner in which they will discharge a constitutional duty: whether they will make the expense of so doing first a charge upon a specific "project" and a charge upon the general revenue of the municipality only in the event that the project in question fails to meet the obligation imposed upon it, or whether the municipality prefers to meet the expense of performing that governmental duty entirely from its general revenue, thereby requiring the cost of a service to the occupants of improved property only to be borne in part by the owners of unimproved property. In this instance the City of Charleston in 1935 exercised its election as authorized by statute and saw fit, instead of making garbage disposal an expense to be borne by its general revenue, to make the capital and operating cost incurred thereby first chargeable upon the project and its earnings. This the city did by incurring an express contractual obligation under the statute to those who bought incinerator bonds. The City of Charleston cannot be permitted to impair that obligation, by its own act, by a vote of its people or otherwise. The question of what the duty of the City of Charleston is in the event it should prove impossible to derive sufficient revenue from the earnings of the incinerator plant to properly meet its contractual

obligations and to properly perform its governmental duties in the premises is not now before us. Consequently, nothing contained in this opinion is to be regarded as an expression of views thereon.

As to acquiescence in effect barring petitioners from relief by mandamus by being treated as a waiver of the city's failure to perform, we think that it is at once apparent that no alteration in position by any respondent by reason of acquiescence or delay which, in the event of present enforcement, would operate to the detriment of respondents, has been shown. To our minds this fact is sufficient to preclude the application of the principle sought to be invoked. Furthermore, petitioners are charged with no knowledge of the method heretofore used by the city in providing the expense of operating the incinerator, maintaining a sinking fund or meeting the interest payments on the bonds charged to petitioners nor to the bondholders. Surely the mere payment of interest due on his bond does not charge a bondholder with knowledge of the method used by the city in acquiring the money necessary to make the payment, and surely without that knowledge he cannot be said to have acquiesced in the method used.

For the foregoing reasons the peremptory writ of mandamus is awarded in accordance with the prayer of relators' petition.

*Writ awarded.*

Lovins, Judge, dissenting.

Because of the nature of the writ, matters presented to this Court by means of a proceeding in mandamus are always unusually urgent to the parties concerned. As a result of such urgency, sometimes the parties fail to develop the issues, so that at times there is danger of failing fully and properly to consider those issues.

The unusual urgency of the case at bar has been further accentuated by certain political and financial considerations which are apparent, even from the meager record presented herein. Because of the political urgency of the

so-called mandate of the electorate, supported by both political parties in the City of Charleston, the city's council chose to pay the annual expenses incident to the city's garbage disposal system from its general revenue funds. Realizing, perhaps, the financial strain this action would put upon the city's treasury, this proceeding was instituted to annul that action of the council. Thus the political responsibility of the municipal authorities in connection therewith has been shifted.

Probably because of such complications, urgent as they may be, I do not think that the issues between the parties to this proceeding have been as fully developed as the decided cases and authorities would warrant. I am convinced that, as a result, the majority has reached a decision herein which ignores time-honored and applicable principles of law.

The principles to which I refer are fundamental and inherent in our democracy as established by our Federal and State Constitutions. We are taught that fundamentally the sovereign power of our Government is divided into three separate branches: the executive, the legislative and the judicial. Such division of power is a part of the framework of our Federal, State and Municipal Governments. Although each branch of this power acts as a check upon, and balance for, the other branches, each is an entity within itself in that its powers, respecting the governmental functions it is intended to perform, are inviolable by the others. But in the instant case, this Court, as the supreme authority of the state judicial branch of Government, is asked to control the discretionary action of a municipal legislative body. Undoubtedly, we have authority to check the functions of the municipal legislative body in so far as it operates as a purely administrative board, if such body acts in a capricious, arbitrary, or fraudulent manner, or acts on a mistaken view of the law. Equally so, there can be no doubt that we are without authority to control or interfere with the proper and lawful exercise of a legislative discretion by the Charleston City Council. I am convinced that the

decided cases of this jurisdiction support the proposition that the actions of the city council under attack in this proceeding are legislative in their character, and were lawfully exercised.

Citing the case of *Hayes* v. *The Town of Cedar Grove*, 126 W. Va. 828, 30 S. E. 2d 726, as authority, the majority opinion admits that the question of garbage disposal is a governmental function of a municipality; and that the municipal council can exercise its legislative discretion by charging the costs thereof to the city's general revenue. Chapter 68, Acts of the Legislature, 1935, provides an alternative method by which a municipality may exercise its governmental functions in this respect. But the majority opinion, admitting the council's legislative prerogative initially, states that once exercised, by adopting the benefits provided for in Chapter 68, Acts of the Legislature, 1935, the council loses its legislative discretion and becomes an administrative board only. It is in this respect that I disagree. Certainly, the council, as an administrative body, functions in the capacity of a trustee for the security of holders of bonds issued under the provisions of Chapter 68, Acts of the Legislature, 1935. But the Legislature did not intend by the passage of Chapter 68, Acts of the Legislature, 1935, to deprive the council of any municipality of its duly constituted legislative discretion and authority. I am of the opinion that the Act of the Legislature under discussion merely placed upon a municipal council a secondary role, without effect upon legislative functions otherwise duly delegated to it.

In point 4, syllabus, *Warden* v. *Grafton*, 125 W. Va. 658, 26 S. E. 2d 1, this Court said: "The validity of municipal revenue bonds * * * is not impaired or affected by the fact that funds derived from general taxation, or from other sources, also has been, or are to be, used * * *." In the body of the opinion, this Court stated: "Of course, the city, previous to the enactment of this statute [Ch. 68, Acts, 1935], had the power to expend its own funds, or to raise funds through validly issued bonds for the purpose of building, or aiding in the construction of, a hospital.

*This power is by the very terms of Chapter 68, Acts of the Legislature, 1935, itself [Section 25], untouched, survives in full, and prevails over any provision of that act which might otherwise be construed as conflicting therewith."* (Italics supplied.) Thus we see that this Court, as well as the Act itself, has heretofore recognized that legislative discretion exists and is continuing, despite Chapter 68, Acts, 1935. But the crux of the majority opinion herein is to the effect that a municipality loses its legislative discretion by electing to avail itself of the benefits provided by Chapter 68, Acts, 1935.

In the instant case, the relators fall within and represent two separate classifications: taxpayers and bondholders. It is clear that as taxpayers they cannot complain of the council's actions herein. The council has merely appropriated money from its general revenue funds for the payment of what is, admittedly, a governmental function. See *Hayes* v. *The Town of Cedar Grove, supra.* "A town may expend its current revenues and accrued funds and make contracts to that end." *Clay Co.* v. *New Martinsville,* 67 W. Va. 525, 68 S. E. 118. The fact that included in the appropriation were funds to be applied to the payment of interest and principal of the revenue bonds, secured by a lien upon the garbage disposal plant, does not affect the validity of that appropriation. Such funds are properly a part of the annual operating expenses of the entire garbage disposal system.

Nor does such action constitute an assumption of the bonded indebtedness of the garbage disposal plant. It is merely an annual appropriation of funds from which the interest and principal accruing within that year, can be paid. "If the contracts and engagements of a municipal corporation do not overreach the dependable current resources for which provision exists at the time the contracts and engagements are assumed, no lawful objections to them can be interposed, however great the indebtedness of the municipality may be." *Clay Co.* v. *New Martinsville, supra.* See *Warden* v. *Grafton, supra; Allison* v. *City*

*of Chester,* 69 W. Va. 533, 72 S. E. 472; 41 W. Va. Law Quarterly, 78.

If the relators, as taxpayers, feel aggrieved, their recourse is to the electorate and not to this Court. Admittedly, the referendum election held on the question is not controlling, but certainly it was advisory in that it reflected the desires of the majority of the voters.

Nor, in my opinion, can the bondholders complain. They admit that there has been no default in payment of the principal or interest on any of the bonds as due. They contend that payment to them from the general revenues of the city would be unlawful and thus recoverable by the city. But, as heretofore pointed out, such payment under an ordinance, properly appropriating money therefor, could not be the subject of a valid, legal complaint.

The bondholders urge that the debts owned by them, and the security thereof, might eventually be affected by the present action of the city council. That is to say that the general revenues of the city, at some future date, may not be sufficient to allow for appropriations therefrom providing for payment of the then accruing principal and interest. This may be true. But in such event they are fully protected by the provisions of the bonds and the statute under which the bonds were issued. The provisions of Section 24, Chapter 68, Acts, 1935, quoted in the majority opinion as Code, 8-4A-24, were designed to protect against such eventuality. But where default in the payment of the bonds is speculative and *in futuro,* that section was not intended to authorize the judicial branch of the government to supplant the legislative discretion vested in the municipal council. In other words that section does not become operative so as to divest the city council of its legislative discretion until there is default, or the imminence thereof can be clearly shown. No such case is presented here, and, under the circumstances of this case, I am unable to see whereby the sanctity of the bonds, as contracts, is violated or threatened to be violated.

This Court has stated: " '* * * Where legislative power is conferred upon * * * [a municipal corporation] * * * by the State it is necesary that a degree of freedom should be allowed in .its exercise; otherwise, the city would be so hampered in the government of its people as would defeat the very ends of its incorporation. Hence it is that state courts will never interfere with the free exercise of such rights as are left to the discretion of a corporate authority, unless such authority should go beyond the scope of power delegated, or unless the discretion given should be abused by an arbitrary exercise thereof, and by a plain and unwarranted violation of private rights.' " *Philippi* v. *Water Co.*, 99 W. Va. 473, 481, 129 S. E. 465.

Indeed, the general rule is well stated in the following language: "Assuming that the municipal authorities have acted within the orbit of their lawful authority, no principle of law is better established than that courts will not sit in review of proceedings of municipal officers and departments, especially those. involving legislative discretion, in the absence of bad faith, fraud, arbitrary action or abuse of power. Thus where a municipal board is authorized to do a particular act in its discretion, the courts will not control that discretion unless manifestly abused, nor inquire into the propriety, economy and general wisdom of the undertaking, or into the details of the manner adopted to carry the matter into execution." 1 McQuillin Municipal Corporations, Second Edition, Revised, Section 390. See I Dillon on Municipal Corporations, Fifth Edition, Section 242.

In the instant case, the majority opinion admits that the city council is authorized to appropriate money from the city's general revenue funds for garbage disposal purposes; it is not contended that the city council has arbitrarily, fraudulently, or capriciously exercised any discretion granted it; and though, by way of speculation, at some future date there may be a violation of some private rights by default in the payment to the bondholders, there certainly is no "plain and unwarranted" violation of those rights at present. Therefore, I am of opinion that the

principles of *Philippi* v. *Water Co., supra,* fully apply to the case at bar.

The result of this proceeding is typical of a trend in centralization of government, which eventually will eliminate local self-government. The benefits of local self-government are attested by its long use throughout history by liberty loving peoples.

Moreover, since any expenses incident to the collection of garbage at households throughout the city, and transportation thereof to the garbage disposal plant, are not involved in this litigation, they should not be considered by the respondents in establishing the rates and charges required by the writ herein. By implication the writ so directs. But because such expenses are so closely related to the charges which the writ does require to be considered, I think that the writ, as well as the opinion, should, by explicit language, exclude the expenses of garbage collection and transportation.

Convinced that the majority opinion ignores the principles discussed herein, and that those principles, supported as they are by the decided cases, are controlling, I would refuse the writ herein sought.