[No. 8318–0–I.   Division One.   May 11, 1981.]

Trans–Canada Enterprises, Ltd., *Respondent,* v.
King County, et al, *Appellants.*

*Norm Maleng, Prosecuting Attorney for King County,* and *Susan Agid, Deputy,* and *Don Herron, Prosecuting Attorney for Pierce County,* and *Karen G. Seinfeld, Deputy,* for appellants.

*Robert Ratcliffe,* for respondent.

ANDERSEN, J.—

## FACTS OF CASE

This is an appeal by King and Pierce Counties, and certain officials of those counties, from a judgment mandating that a broken dike on the White River be repaired.[1]

The controversy between the parties in this mandamus action and the trial court's resolution of it are well set out in the findings of fact and conclusions of law entered by the trial court following a trial. They are as follows:

## FINDINGS OF FACT

The Court has jurisdiction over the parties hereto and the subject matter herein.

Finding of fact No. 1.

The plaintiff, Trans–Canada Enterprises, Ltd., owns a substantial piece of real property located in Sections 28 and 29, Township 21 North Range 5, E.W.M., King County, Washington. Plaintiff's property is located within the City of Auburn. A portion of the plaintiff's property abuts the White River.

Finding of fact No. 2.

The defendants King County and Pierce County are

---

[1]The judgment on writ of mandamus provides:

"ORDERED that the defendants herein are mandated by this Court to proceed promptly to complete the repairs to the breach in the dike on the left bank of the White River located at approximately River Mile 10.66 (also described as the approximately 1500 feet including Inter County River Station 96) in Section 34, Township 21, Range 5 E.W.M.

"The defendants are further mandated to appropriate the necessary funds to fulfill their obligations to control the flood waters of the White River as set forth in the Intercounty River Improvement Agreement of January 18, 1914."

the parties to a certain contract dated the 18th day of January, 1914. This contract establishes an organization to be known as the Intercounty River Improvement Agency. The contract was entered into pursuant to legislative authority contained in RCW 86.13. The Court finds that this agreement was entered into on behalf of not just the county government, but on behalf of the citizens and taxpayers as well.

Finding of fact No. 3.

That the purpose of the Intercounty River Improvement Agreement was to provide for controlling the flooding of the White River. That one of the methods adopted by the counties to control flood waters was to construct a series of dikes along the banks of the White River, particularly along the south bank. That for purposes of designation of areas of the White River to be protected by this agreement, various locations along the White River are designated by the term "River Mile".

Finding of fact No. 4.

In December of 1975, there was a major break in the dike on the White River at approximately River Mile 10.66 in Section 34, Township 21 North Range 5 E.W.M. That following the break in the dike there was flooding of adjacent lands including the land owned by the plaintiff herein.

Finding of fact No. 5.

That in the spring of 1976, representatives of the Engineering Department of the defendant Pierce County were sent to the site of the break of the dike to commence repairs. That while they were surveying the area to determine what might be necessary for the repairs they were confronted by members of the Muckleshoot Indian Tribe who told the repairmen to cease their work and leave the area because the Indians claim an interest in the riverbed and claimed that it was necessary to have their permission to make repairs on the dike.

Finding of fact No. 6.

That while the area in question is within what has historically been defined since 1874 as the Muckleshoot Indian Reservation, all of the property in Section 34 is now owned by non-Indian citizens and taxpayers.

**Finding of fact No. 7.**

That representatives of the Intercounty River Improvement Agency conducted negotiations with the Muckleshoot Indians for a long period of time which were never concluded. The defendant Pierce County was successful in having the area designated as a disaster area because of the flooding and federal funds were appropriated for the repair of the dike but the repairs were never completed and the federal government cancelled the appropriation.

**Finding of fact No. 8.**

In November of 1977, there was again flooding in the area causing damage to the plaintiff's property and flooding of the access roadway, Stuck River Drive.

That the access roadway also serves the City of Auburn property located adjacent to the plaintiff's property and the City of Auburn for a watershed containing almost three–fourths of the water supply for the City of Auburn. The roadway is the only access and has been subject to flooding because of the breach in the dike.

That prior to the breach in the dike in December of 1975, the waters of the White River were contained in the river channel and banks. That repairs to the dike were feasible and if the dike was repaired it would prevent flooding of the plaintiff's property and the access roads thereto.

**Finding of fact No. 9.**

From the foregoing Findings of Fact, the Court now makes the following

CONCLUSIONS OF LAW

That the plaintiffs herein as citizens and taxpayers are beneficiaries of the Intercounty River Improvement Agreement of January 18, 1914.

**Conclusion of law No. 1.**

That pursuant to the terms and conditions of the agreement, as it was authorized by state statute that the defendants have a duty to control flooding of the White River.

**Conclusion of law No. 2.**

That the defendants herein have not proceeded to make repairs to the dike and to prevent flooding of the

plaintiff's property and the access road thereto even though they have known of the break in the dike since December of 1975. Plaintiff herein has been injured and has no plain, speedy or adequate remedy at law. Therefore, the defendants shall be mandated by this Court to proceed with repairs in the break of the dike beginning at River Mile 10.66 (near and including Inter County River Station 96) and including all of the adjacent area along the banks of the White River so as to prevent flooding of the plaintiff's property.

Conclusion of law No. 3.

The defendants shall appropriate such funds and expend them as necessary to comply with the terms of the agreement to control floods, including, if necessary, funds to be expended in the exercise of the right of eminent domain to acquire such easements or interest in property which may be necessary to complete the construction of the diking in the manner that it was maintained prior to the breach in 1975. Defendants shall proceed promptly and in good faith to take all steps necessary to comply with the writ of mandamus.

Conclusion of law No. 4.

A further history of the flooding problem and historical background of this general area, together with legislative and other public efforts to control the flooding, have been duly chronicled in this state's appellate court decisions. *See Conger v. Pierce County,* 116 Wash. 27, 198 P. 377, 18 A.L.R. 393 (1921); *Short v. Pierce County,* 194 Wash. 421, 78 P.2d 610 (1938); and *State ex rel. Schlarb v. Smith,* 19 Wn.2d 109, 141 P.2d 651 (1943).

We have carefully reviewed the record and conclude that the foregoing findings of fact are supported by substantial evidence in the record. Accordingly, we are constitutionally mandated to treat them as verities on appeal, *Streater v. White,* 26 Wn. App. 430, 432, 613 P.2d 187 (1980), *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959), and herewith do so.

Trans–Canada Enterprises, Limited, whose property periodically floods due to the breached White River dike, will be referred to herein as the property owner. For conve-

nience, the defendant Counties who have joined together to form an intercounty river improvement district (and an agency to administer the district) will, together with the officials who had been included as parties to this litigation, be collectively referred to as the intercounty agency.

After the dike broke in December of 1975, a repair crew went to the site and commenced bulldozing gravel from the riverbed into the breach in the dike. Some members of the Muckleshoot Indian Tribe, which claims an interest in the riverbed, objected and the work ceased.[2]

Aside from a few exchanges of letters and brief discussions between the intercounty agency and the Muckleshoot Tribe, and their respective attorneys, and despite additional flooding and damage in the area, nothing further has ever been done to either resolve the differences or repair the dike. It was not until 3½ years after the dike had broken that the property owner commenced this action by a writ of mandamus.

This appeal by the intercounty agency presents two basic issues.

## ISSUES

ISSUE ONE. Does CR 19 require dismissal of the action for failure to join the Muckleshoot Indian Tribe as a party?

ISSUE TWO. Did the trial court err by mandating repair of the broken White River dike?

## DECISION

ISSUE ONE.

CONCLUSION. Because this court can modify the relief granted by the trial court to alleviate any possible prejudice to the absent party, CR 19 does not require dismissal of the action.

It is the intercounty agency's claim that the Muckleshoot

---

[2]The Muckleshoot Tribe's claim to the channel riverbed is the subject of an action in the United States District Court for the Western District of Washington, *Muckleshoot Indian Tribe v. Trans–Canada Enterprises, Ltd.,* No. C77–909R. There is also another action between those parties pending in that same court, No. C77–882M. That action relates to a tribal business license ordinance.

Tribe is an indispensable party to this action because of its claim to the riverbed and that it either had to be joined or the action dismissed. CR 19.

As the United States Supreme Court has held, "[a]bsent an effective waiver or consent, it is settled that a state court may not exercise jurisdiction over a recognized Indian tribe." *Puyallup Tribe, Inc. v. Department of Game,* 433 U.S. 165, 172, 53 L. Ed. 2d 667, 97 S. Ct. 2616 (1977). Based thereon, the intercounty agency argues that the Muckleshoot Tribe is needed for adjudication of this action under the standards set forth in CR 19(a), and since it is an indispensable party and cannot be joined in this state court action, CR 19(b) requires that the action be dismissed.

Although courts naturally attempt to avoid multiplicity of litigation and to give parties a day in court before rendering decisions that might affect them, there is also a somewhat contradictory judicial desire to resolve legitimate disputes brought before the courts rather than leaving the parties without a remedy. 7 C. Wright & A. Miller, *Federal Practice* § 1602, at 22 (1972).

It appears that the Muckleshoot Tribe is a necessary party within CR 19(a). Since it cannot be joined as a party against its wishes, we must then look to CR 19(b) to decide "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent [party] being thus regarded as indispensable." CR 19(b); *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 19 L. Ed. 2d 936, 88 S. Ct. 733 (1968); *Aungst v. Roberts Constr. Co.,* 95 Wn.2d 439, 625 P.2d 167 (1981).

In the present case, the judgment on the writ of mandamus was broad in scope and imperative in command. The intercounty agency was flatly mandated by the trial court "to proceed promptly to complete the repairs to the breach in the dike" without reference to the Muckleshoot Tribe's claim to the riverbed, and which claim this court has since been advised by counsel has been confirmed by the Federal

District Court. See footnote 2. The trial judge in his oral decision in this case did make clear, however, that he felt that since the Muckleshoot Tribe and its claim was not before him, he could not resolve it and that impossibility of performance caused thereby could be considered in defense of further action herein. That aspect of the oral decision was not, however, carried over into the judgment.

The United States Supreme Court, in considering the federal counterpart of our CR 19(b), reviewed the four "interests" suggested by the rule to be considered and held as follows:

> Rule 19(b) also directs a [trial] court to consider the possibility of shaping relief to accommodate these four interests. Commentators had argued that greater attention should be paid to this potential solution to a joinder stymie, and the Rule now makes it explicit that a court should consider modification of a judgment as an alternative to dismissal. Needless to say, *a court of appeals may also properly require suitable modification as a condition of affirmance.*

(Footnotes omitted. Italics ours.) *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. at 111–12.

Based on these CR 19(b) interests, therefore, we hereby modify the judgment on writ of mandamus herein (footnote 1) by adding after the prefatory words "ORDERED that", the words, "to the extent not rendered impossible by the legal rights of the Muckleshoot Indian Tribe to the riverbed of the White River as adjudicated in United States District Court for the Western District of Washington Cause No. C77–909R," and with the remaining part of the judgment to stand as written.[3] Thus modified, dismissal of this action

---

[3]Counsel for the intercounty agency point to other possible similar claims as justifying that agency's continued inaction on repairing the breached dike. Such speculation does not take into account the various ways in which a dike can be repaired, aside from using gravel from the adjacent riverbed, or the following other facts: that the dike has existed for decades; that it was built and has been maintained with public funds; and that, so far as the Muckleshoot Tribe is concerned, the property in the section where the dike is breached "is now owned by non–Indian citizens and taxpayers." Finding of fact No. 7. Nor do arguments of counsel take into account the flood control obligations imposed on the intercounty

under CR 19(b) is not required.

ISSUE TWO.

CONCLUSION. Mandamus was a proper remedy to apply under the law and facts found, and the trial court did not err in mandating that the broken dike be repaired.

Mandamus will only issue when there is no plain, speedy or adequate remedy in the ordinary course of law. RCW 7.16.170; *State ex rel. Ass'n of Wash. Indus. v. Johnson,* 56 Wn.2d 407, 410-11, 353 P.2d 881 (1960). This is such a case, as the trial court properly concluded. Conclusion of law No. 3.

It is clear that a court may issue a writ of mandamus to compel a public official to perform a duty imposed on that official by law. RCW 7.16.160. *See Vanderpool v. Rabideau,* 16 Wn. App. 496, 497, 557 P.2d 21 (1976). "The performance of mandatory duties relating to public improvements may, in a proper case, be compelled by mandamus." 17 E. McQuillin, *Municipal Corporations* § 51.40, at 556 (3d rev. ed. 1968). "Courts will not by mandamus attempt to control the discretion of subordinate bodies acting within the limits of discretion vested in them by law. Where courts do interfere, it is upon the theory that the action is so capricious and arbitrary as to evidence a total failure to exercise discretion and is, therefore, not a valid act." *State ex rel. Farmer v. Austin,* 186 Wash. 577, 583, 59 P.2d 379 (1936).

In the present case, disputed questions of fact were tried as authorized by statute. *See* RCW 7.16.210. The trial was to the court. During the trial, the court expressed particular concern over the issue of whether or not the intercounty agency was merely exercising its discretion in refusing to repair the dike. In deciding as it did, it resolved that issue against the intercounty agency's claim that it was exercising its discretion by not making the repairs. The trial court

---

agency by the Intercounty River Improvement Agreement, or the array of legal means available to that end including those provided by RCW 86.12 and RCW 86.13.

found and concluded that the intercounty agency had an affirmative duty to control the flooding,[4] that it failed to perform that duty by not making the repairs necessary to control the flooding and that it should proceed to do so.

The intercounty agency's legal duty to control the flooding distinguishes this case from *State ex rel. Clark v. Seattle,* 137 Wash. 455, 242 P. 966, 46 A.L.R. 253 (1926) relied on by the intercounty agency. In *Clark,* the court found that the City of Seattle had no legal duty to repair a bridge which had been destroyed by fire. In that case the City also maintained other access routes to the homes of the persons who unsuccessfully sought mandamus. The *Clark* court stated:

There are authorities, many of which are cited by appellants, which hold as stated in 18 R. C. L., § 165, p. 240, that

"Mandamus is generally recognized as a proper remedy to compel public officers to perform their duty to take care of and keep in repair public highways, bridges and the like, whenever the necessity for its exercise is so apparent and obvious that the refusal to act is the result of a determination not to discharge a plain duty."

---

[4]In pertinent part, the Intercounty River Improvement Agreement provides in section (1) under the heading, "The object of this contract", that "the two counties do hereby agree together that the flow of said waters shall for all time be controlled so as to be confined to a channel carrying the same through the Puyallup Valley into Commencement Bay" and "[t]o provide ways and means for such control and disposition of said waters."

Further, the "Intercounty River Improvement Engineer", who had been "Director of Public Works and Intercounty River for about 10 years", was asked and answered as follows:

Q Was the primary purpose of this agreement to assist development at any point along that river?

A No, I don't think it was to assist development. It was to stop the flooding on the lands that were being flooded.

And yet further this witness was asked and answered:

Q After the dike was broken you said in December of 1975 did Inter–County make any attempt to repair the dike?

A Yes.

Q Why were you interested in repairing it?

A Well, we want to maintain the integrity of the system that has been built utilizing public funds, and since this was a part of our integral system, dike system, and it had failed we definitely wanted to get it repaired.

That has reference to the arbitrary refusal to perform a plain duty.

*State ex rel. Clark v. Seattle, supra* at 459.

Thus in *Clark* there was no arbitrary refusal to perform a plain duty, therefore, mandamus would not lie. Here there was such a refusal.

The intercounty agency had such an apparent, obvious and imperative duty to repair the dike that its inaction could and was properly considered as a refusal to act, thus justifying mandamus. *See Board of County Comm'rs v. State,* 369 P.2d 537, 542 (Wyo. 1962); 52 Am. Jur. 2d *Mandamus* § 223, at 551 (1970). The intercounty agency was appropriately mandated to do its duty by repairing the dike. Appropriately, it was not directed as to the specifics of how that duty was to be performed or how it was to expend its money on the dike repair project.

The intercounty agency also argues that enforcement of contract terms is not appropriate in a mandamus action. This general rule is based on the availability of an adequate legal remedy for breach of contract by way of a damage action. It does not apply here where, pursuant to state enabling legislation, municipal bodies contracted to perform an official duty, namely, flood control. *See State ex rel. Klostermeyer v. Charleston,* 130 W. Va. 490, 494–95, 45 S.E.2d 7, 10, 175 A.L.R. 637 (1947).

The intercounty agency argues further that according to third party beneficiary contract principles, the property owner had no right to bring this action since it was not an intended beneficiary. Although the flood control duty imposed on the intercounty agency is based on the contract discussed above, it is an official duty benefiting the public. Here, the petitioner is an adjacent property owner and was a proper party to initiate mandamus proceedings because its rights were peculiarly and specially affected by nonperformance of the duty. *State ex rel. Grinsfelder v. Spokane St. Ry.,* 19 Wash. 518, 525, 53 P. 719 (1898); *State ex rel. Pac. Am. Fisheries v. Darwin,* 81 Wash. 1, 11, 142 P. 441 (1914); 17 E. McQuillin, *Municipal Corporations* § 51.58

(3d rev. ed. 1968).

The intercounty agency also argues that paragraph (9) of the Intercounty River Improvement Agreement prohibited the landowner from bringing this action. When the noted paragraph of the agreement is read carefully and in context with the full agreement, as it must be, it deals only with damage actions and claims. The action herein is not an action for damages but is an action to compel public officials to do their duty and repair a breached dike.

The intercounty agency has not assigned error to the mandating of an appropriation to pay for the required flood control efforts (see footnote 1), therefore we do not address it. In reviewing the record, however, it appears that initially, at least, the projected cost of repairing the breached dike was $20,000, a sum well within the intercounty agency's regular budget. *See also State ex rel. Schlarb v. Smith,* 19 Wn.2d 109, 141 P.2d 651 (1943).

The intercounty agency's assignment of error that the trial court mistakenly refused to admit the testimony of the Muckleshoot Tribe's attorney is not well taken. That attorney testified fully and at length.

Affirmed as modified.

JAMES, C.J., and DURHAM, J., concur.

Reconsideration denied July 6, 1981.

Review denied by Supreme Court September 25, 1981.